[Cite as *State v. Agostini*, 2017-Ohio-4042.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2016-02-013 |
| Plaintiff-Appellee, | : | CA2016-02-014 |
| | : | O P I N I O N |
| - vs - | | 5/30/2017 |
| | : | |
| JERRY T. AGOSTINI, JR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 15CR31283 and 15CR31555

Mike DeWine, Ohio Attorney General, Stephen Maher, 150 East Gay Street, 16th Floor, Columbus, Ohio 43215 and David P. Fornshell, Warren County Prosecuting Attorney, Kirsten Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Bryan Hicks, P.O. Box 359, Lebanon, Ohio 46036, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Jerry T. Agostini, Jr., appeals from his convictions in the Warren County Court of Common Pleas stemming from a criminal enterprise in which he obtained motor vehicles and money through deception from various car dealerships located throughout Ohio and Kentucky. For the reasons set forth below, we affirm appellant's convictions.

{¶ 2}  On August 28, 2015, appellant was indicted in Warren County Court of Common Pleas Case No. 15CR31283 on the following counts:  one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the second degree; eight counts of grand theft of a motor vehicle by deception in violation of R.C. 2913.02(A)(3), felonies of the fourth degree; ten counts of theft by deception in violation of R.C. 2913.02(A)(3), where three counts were felonies of the fourth degree and seven counts were felonies of the fifth degree; two counts of attempted grand theft of a motor vehicle by deception in violation of R.C. 2913.02(A)(3) and 2923.02(A), felonies of the fifth degree; one count of attempted theft by deception in violation of R.C. 2913.02(A)(3) and 2923.02(A), a felony of the fifth degree; two counts of receiving stolen property of a motor vehicle in violation of R.C. 2913.51(A), felonies of the fourth degree; four counts of receiving stolen property in violation of R.C. 2913.51(A), where two counts were felonies of the fourth degree and two were felonies of the fifth degree; and one count of theft of a check by deception in violation of R.C. 2913.02(A)(3), a misdemeanor of the first degree.

{¶ 3}  On December 21, 2015, appellant was indicted in Warren County Court of Common Pleas Case No. 15CR31555 on one count of identity fraud in violation of R.C. 2913.49(B)(1) and one count of forgery in violation of R.C. 2913.31(A)(1), felonies of the second degree as the victim of the offenses, Don Weber, was an elderly person.

{¶ 4}  The charges arose out of appellant's conduct between January 21, 2014, and February 25, 2015, wherein appellant used his company, Engineered Environmental, LLC, false financial documents, and the identity of others to obtain or attempt to obtain 12 motor vehicles and various pieces of commercial construction equipment from car dealerships and businesses located in Fort Mitchell, Kentucky and Cuyahoga, Warren, and Hamilton Counties

in Ohio.[1] Engineered Environmental was a home improvement company that had three bank accounts with Chase Bank. Bank records for these accounts indicated that the highest balance in any of these accounts was $375. Appellant, however, represented his business as a multimillion dollar business and presented false financial statements to car dealerships and the dealerships' credit companies in order to obtain financing for vehicles. Appellant presented documentation purportedly for Engineered Environmental for the years ending in December 2012 and December 2013. The financial documents falsely claimed to have been audited by the prestigious accounting firm "DeLoitte & Touche, USA, LLP" and set forth a gross profit for Engineered Environmental of $3,077,000 in 2012 and $3,427,300 in 2013 and a net income of $350,500 in 2012 and $376,300 in 2013.

{¶ 5} Using these false documents and either his own identity or that of Robert Yenke or Don Weber, appellant deceptively obtained vehicles or commercial equipment for his business.[2] When obtaining the vehicles, appellant would also exploit the sales practice of financing "upfit" improvements to the vehicles to fraudulently obtain cash for vehicle upgrades that were never completed.[3] In a typical upfit transaction, a customization is performed by a company that receives a referral from the vehicle dealership. The cost of the upfit is estimated and is added to the customer's loan amount for the vehicle purchase. When the loan proceeds become available, the dealership pays the upfit provider directly after receiving an invoice. The customer makes monthly payment towards

---

1. On January 2, 2002, appellant filed short-form Articles of Incorporation with the Ohio Secretary of State for Engineered Environmental, LLC, naming himself as the sole incorporator and statutory agent.

2. On one occasion, appellant attempted to obtain a nearly $50,000 Audi convertible as a birthday present for his girlfriend. Appellant informed the dealership that the loan would be in his company's name, and he introduced falsely audited financial statements to try to get approval for the loan.

3. The term "upfit" refers to add-ons or customizations to a commercial vehicle to meet the specific needs of the business customer. Common add-ons are graphic wraps, wherein advertising signage specific to the business buying the vehicle would be wrapped around the entire vehicle, and shelving units, wherein shelves are installed in work vans to hold the tools or parts used in the business.

the loan, and this payment is applied towards the cost of the vehicle and the cost of the upfit.

{¶ 6} Appellant did not follow this practice with respect to upfitting the vehicles he fraudulently obtained. Rather than using a business known to the dealerships for the upfit work, appellant claimed the work was completed by various businesses with whom he had a relationship. Appellant produced false invoices from these businesses claiming that the upfit work had been completed and paid for by appellant's business, even though no work had been started or completed on the vehicles. The dealerships then sent checks to Engineered Environmental for the cost of the upfit work appellant alleged he had already paid.[4] Appellant cashed these checks at various CheckSmart locations. Through his deceptive actions, appellant was able to obtain over $75,000 in cash for upfit work that was never performed.

{¶ 7} Eventually law enforcement was apprised of appellant's conduct and an investigator in the economic crime unit of the Ohio Attorney General's Office began looking into the matter. This investigation led to the charges set forth in the indictments.

{¶ 8} The two indictments were consolidated for trial, and a jury trial commenced on January 19, 2016. The state called more than 30 witnesses and presented hundreds of documents related to appellant's financial transactions with the dealerships and the dealerships' credit companies. These documents, as well as photographs of the vehicles fraudulently obtained by appellant, the false invoices appellant presented for the cost of the upfits, a cut up check bearing Yenke's signature found in appellant's residence, an audio clip of appellant's voice, video recordings of appellant cashing the upfit checks at CheckSmart, and photographs and documents pertaining to photo lineups performed by the Union Township Police Department and Warren County Sheriff's Office, were accepted into evidence by the trial court. Following the state's presentation of its case-in-chief, appellant

---

4. On one occasion, a check was made payable to a third-party business that had allegedly completed the upfit work. Appellant altered the payee line of the check to add his business's name before he cashed the check.

moved for acquittal pursuant to Crim.R. 29, but his motion was denied by the trial court. Thereafter, appellant rested his defense without calling any witnesses, and the matter was submitted to the jury.

{¶ 9} The jury rendered guilty verdicts on all counts set forth in both indictments. After merging some of appellant's convictions as allied offenses of similar import, appellant was sentenced to an aggregate prison term of 19 years. The trial court ordered appellant to pay restitution in the amount of $142,309.08.

{¶ 10} Appellant timely appealed his convictions, raising five assignments of error.

## I. JURY INSTRUCTIONS

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN ITS JURY INSTRUCTIONS.

{¶ 13} In his first assignment of error, appellant argues the trial court committed prejudicial and reversible error in instructing the jury. Appellant raises two arguments: the first argument involves the trial court's "attempt" jury instruction as it pertained to Counts 18, 19, and 20 in Case No. 15CR31283, and the second argument involves the court's failure to give a jury instruction regarding the credibility of an eyewitness identification resulting from a photo lineup.

### A. "Attempt" Jury Instruction

{¶ 14} Counts 18 and 20 charged appellant with attempted grand theft of a motor vehicle by deception and, respectively, involved a 2015 Mercedes-Benz Freightliner Van from Fyda Freightliner in Hamilton County, Ohio and a 2014 Audi A5 from Audi Connection in Hamilton County, Ohio. Count 19 charged appellant with attempted theft by deception of a 50G Compact Excavator and HH60 Hydraulic Breaker valued at more than $77,000 from Murphy Tractor in Hamilton Ohio. Although appellant submitted loan documents to obtain

the various vehicles and commercial equipment identified, he was, for various reasons, unsuccessful in obtaining possession of the items and was therefore charged with attempt.

{¶ 15} The trial court's jury instructions for Counts 18, 19, and 20 mirrored the standard instructions as set forth in *Ohio Jury Instructions*, CR Section 523.02(1). For instance, with respect to Count 18, the trial court instructed the jury, in relevant part, as follows:

> Count 18 is attempted grand theft of a motor vehicle by deception. Defendant is charged with the attempt to commit the offense of grand theft of a motor vehicle by deception.
>
> Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 25th day of November 2014, and in a continuous course of criminal conduct occurring in Warren County, Ohio, and other counties whereby venue is properly placed in Warren County, Ohio, the Defendant attempted with purpose to deprive the owner Fyda Freightliner, of its property to obtain and exert control over a motor vehicle, to wit: Mercedes-Benz Freightliner van, with a value of $57,899, by deception, that, if successful, would constitute the commission of the offense of grand theft of a motor vehicle by deception.

Counts 19 and 20 were identical in format, with appropriate changes being made to identify the date of the offense, the victim of the crime, the property appellant sought, and the value of such property.

{¶ 16} Appellant contends the jury instructions were incomplete, as the court gave "no instruction whatsoever as to what the legal definition of attempt is." Specifically, appellant argues the trial court committed plain error in not providing the following additional instruction to the jury:

> CRIMINAL ATTEMPT (ADDITIONAL). A "criminal attempt" occurs when one (purposely) (knowingly) does or (omits) (fails) to do anything that is an act or (omission) (failure) constituting a substantial step in a course of conduct planned to culminate in his/her commission of the offense. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal (purpose) (knowledge).

*Ohio Jury Instructions*, CR Section 523.02(3).

**{¶ 17}** Appellant acknowledges he failed to object to the trial court's attempt instruction and, therefore, waived all but plain error. "With respect to an allegedly improper jury instruction, plain error exists only where, but for the error, the outcome of the trial would have been clearly different." *State v. Roberts*, 12th Dist. Butler No. CA2001-09-203, 2002-Ohio-4482, ¶ 26, citing *State v. Underwood*, 3 Ohio St.3d 12 (1983), syllabus. *See also* Crim.R. 30(A).

**{¶ 18}** While it would have been accurate and acceptable for the trial court to have given the jury instruction in CR Section 523.02(3), such an instruction was not required. *State v. Fellows*, 7th Dist. Jefferson No. 09 JE 36, 2010-Ohio-2699, ¶ 51. Nor was such an instruction "essential to the jury's deliberative processes." *State v. Martin*, 2d Dist. Montgomery No. 15615, 1996 Ohio App. LEXIS 5994, *14 (Dec. 6, 1996). As the instruction that was given was accurate and sufficient to instruct on the elements of attempt, we find that the trial court did not commit plain error in instructing the jury on attempt. *See Fellows* at ¶ 51.

### B. Photo Lineup Jury Instruction

**{¶ 19}** Appellant also argues that with respect to Count 20, the attempted grand theft of an Audi A5 from Audi Connection, the trial court should have provided an instruction in accordance with R.C. 2933.83(C)(3) as evidence adduced at trial indicated detectives from the Warren County Sheriff's Office did not comply with statutory requirements in administering a photo lineup to Gregory P. Meyer, a sales representative at Audi Connection.

**{¶ 20}** R.C. 2933.83(B) requires any law enforcement agency that conducts live lineups and photo lineups to adopt minimum procedures for conducting the lineups. "Unless impracticable, a blind or blinded administrator shall conduct the live lineup or photo lineup." R.C. 2933.83(B)(1). One manner in which to ensure an administrator is "blind" or "blinded" is

to conduct the photo lineup using a "folder system," wherein a suspect's photograph, five "filler" photographs, and four blank photographs are individually placed in separate folders, marked 1 through 10, and shown in random order to the witness. *See* R.C. 2933.83(A)(6) and (B)(1). "When evidence of a failure to comply with any of the provisions of this section * * * is presented at trial, *the jury shall be instructed* that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." (Emphasis added.) R.C. 2933.83(C)(3).

{¶ 21} At trial, Meyer testified appellant attempted to purchase an Audi A5 as a birthday gift for his "wife," Sara Curry.[5] Appellant told Meyer the car would be in his company's name, and he provided two years of audited financials for the company. Meyer did not believe the financials appellant provided were authentic, but nonetheless told appellant his loan application would be submitted for approval and Audi Connection would be in touch. Appellant was not permitted to leave with the Audi A5 that day.

{¶ 22} Sometime later, detectives from the Warren County Sheriff's Office arrived at Audi Connection to ask about appellant. A photo lineup was conducted, and Meyer was able to identify appellant from the lineup. According to Meyer, when the lineup was conducted, the detectives merely laid six photographs on a conference room table and he "picked out" appellant. Meyer was not advised that he could only view one photo at a time.

{¶ 23} Defense counsel objected to the admissibility of evidence relating to the photo lineup on the basis that the lineup did not comply with the requirements of R.C. 2933.83(B), but this objection was overruled by the trial court. Defense counsel did not, however, request that the jury be instructed in accordance with R.C. 2933.83(C)(3), and the trial court did not provide such an instruction. As appellant did not object to the trial court's omission of an

---

6. Although appellant indicated the Audi A5 was a gift for his "wife," appellant and Sara Curry were not married. The two were romantically involved and had a child together.

instruction in accordance with R.C. 2933.83(C)(3), he has waived all but plain error. *State v. Thompson*, 4th Dist. Vinton No. 12CA688, 2013-Ohio-2235, ¶ 23.

{¶ 24} "The statute mandates a jury instruction on noncompliance only when evidence of a failure to comply is presented at trial." *Id.* at ¶ 24, citing R.C. 2933.83(C)(3). Here, there was some evidence that the Warren County Sheriff's Office failed to comply with the requirements of R.C. 2933.83(B), as Meyer testified he was permitted to look at six photos simultaneously displayed on the conference room table. Although an instruction in accordance with R.C. 2933.83(C)(3) would have been proper, the failure of the instruction does not amount to plain error as the outcome of the trial would not have been different had the instruction been given. The state presented ample evidence, outside of Meyer's identification, that appellant was the individual who attempted theft of the Audi A5 by means of deception. Evidence was introduced that the person negotiating the purchase of the Audi A5 had identified himself as "Jerry Agostini," that the car was to be placed in appellant's company's name, that false financial statements for Engineered Environmental for the years 2012 and 2013 were provided to Audi Connection, and that the car was for appellant's "wife" Sara Curry.

{¶ 25} Accordingly, for the reasons set forth above, we conclude that the trial court's failure to instruct the jury in accordance with R.C. 2933.83(C)(3) did not amount to plain error.

{¶ 26} Appellant's first assignment of error is, therefore, overruled.

## II. DOUBLE JEOPARDY

{¶ 27} Assignment of Error No. 2:

{¶ 28} COUNTS 2 THROUGH 10 VIOLATED DOUBLE JEOPARDY.

{¶ 29} In his second assignment of error, appellant argues double jeopardy should have barred the state from trying and convicting him of the offenses in Counts 2 through 10 of Warren County Court of Common Pleas Case No. 15CR31283, as his conduct relating to

these offenses had already been tried in Clermont County.

{¶ 30} Counts 2 through 10 involved appellant's deceptive actions in obtaining three motor vehicles from Valley Ford Truck, Inc., in Cuyahoga County, Ohio (a 2014 Ford F-350, a 2014 Ford F-450, and a 2014 Ford F-550) and one motor vehicle from Kings Chrysler Jeep Dodge in Warren County, Ohio (a 2014 Dodge Ram 3500 Pro Master), as well as cash for upfits that were never completed to the vehicles.[6] The evidence introduced at trial demonstrated that appellant used the identities of Robert Yenke and Don Weber to obtain the vehicles from Valley Ford Truck and the identity of Yenke to obtain the vehicle from Kings Chrysler Jeep Dodge. In each instance, appellant held Yenke and Weber out as principals or members of Engineered Environmental to facilitate the theft of the motor vehicles and cash from the two dealerships.

{¶ 31} In the Clermont County case, appellant was indicted on four counts of identity fraud in violation of R.C. 2913.49(B)(2) and four counts of forgery in violation of R.C. 2913.31(A)(1), all felonies of the second degree. Each count specified that the victim was an elderly person. Pursuant to the Bill of Particulars filed in the Clermont County case, the charges stemmed from appellant's conduct in representing himself as Yenke and signing Yenke's name in order to obtain "credit, property, services, [or] debt," ostensibly from Valley Ford Truck and Kings Chrysler Jeep Dodge.[7] In the Clermont case, appellant entered a guilty plea to an amended charge of identity fraud in violation of R.C. 2913.49(B)(2), a felony of the fourth degree, in exchange for dismissal of the remaining counts. Appellant was

---

6. Counts 3, 5, and 7 involved checks deceptively obtained from Valley Ford Truck, Inc. in the amounts of $11,500, $11,500, and $6,500, respectively. Counts 8 and 9 involved checks deceptively obtained from Kings Chrysler Jeep Dodge in the amounts of $2,750 and $4,500, respectively.

7. Prior to trial, appellant moved to dismiss Counts 2 through 10 of the indictment in Warren County Common Pleas Case No. 15CR31283 pursuant to the Double Jeopardy Clause of the Fifth Amendment. In support of his motion, appellant attached certified copies of filings in Clermont County Common Pleas Case No. 2014CR0517. A hearing on appellant's motion to dismiss was held on January 8, 2016, and the court orally denied the motion.

sentenced to community control and ordered to have no contact with Yenke or Valley Ford Truck and to pay Valley Ford Truck restitution in the amount of $2,500.[8]

**{¶ 32}** The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that, "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." This provision is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056 (1969).

**{¶ 33}** The Ohio Supreme Court has adopted the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932), to determine whether an accused is successively prosecuted for the same offense. *State v. Mutter*, Slip Opinion No. 2017-Ohio-2928, ¶ 17; *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, ¶ 18; *State v. Best*, 42 Ohio St.2d 530 (1975), paragraph three of the syllabus. Under the *Blockburger* test,

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

*Id.*, citing *Blockburger* at 304. "This test focuses upon the elements of the two statutory provisions, not upon the evidence proffered in a given case." *State v. Thomas*, 61 Ohio St.2d 254, 259 (1980), overruled on other grounds in *State v. Crago*, 53 Ohio St.3d 243 (1990), syllabus. If application of the *Blockburger* test "reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, the subsequent prosecution is barred." *State v. Tolbert*, 60 Ohio St.3d 89 (1991), paragraph one of the syllabus. *See also United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849 (1993).

---

8. Based on the record before us, it is unclear what the $2,500 restitution award was premised upon in the Clermont County case.

**{¶ 34}** Appellant concedes that the statutory elements of the grand theft of a motor vehicle by deception and theft by deception offenses set forth in Counts 2 through 10 of the Warren County case are not identical to the elements of the offenses charged in in the Clermont County case. However, appellant argues the charges in the Warren County case are lesser-included offenses of the identity fraud and forgery charges he already faced in Clermont County.

**{¶ 35}** In determining whether one offense is a lesser-included offense of another, a court must "consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutory defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, paragraph two of the syllabus.

**{¶ 36}** In the Warren County case, appellant faced charges of grand theft of a motor vehicle by deception and theft by deception, violations of R.C. 2913.02(A)(3). Pursuant to that statute, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception."

**{¶ 37}** In the Clermont County case, appellant was convicted of identity fraud in violation of R.C. 2913.49(B)(2), which provides that "[n]o person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * [r]epresent the other person's identifying information as the person's own personal identifying information." The other charge appellant initially faced, but was ultimately dismissed as a result of his guilty plea, was forgery in violation of R.C. 2913.31(A)(1), which provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [f]orge any writing of another without the other person's authority."

{¶ 38} Having examined the charges appellant faced in both the Clermont County case and the Warren County case, we conclude that grand theft of a motor vehicle by deception and theft by deception are not lesser-included offenses of either identity fraud or forgery. The latter two offenses can be committed without also committing the theft by deception offenses. Although the evidence the state used to prove the charges set forth in Counts 2 through 10 of the Warren County case overlapped evidence relevant to appellant's conviction in the Clermont County case, the test for double jeopardy "focuses upon the elements of the two statutory provisions, not upon the evidence proffered." *Thomas*, 61 Ohio St.2d at 259. "[A] mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *United States v. Felix*, 503 U.S. 378, 386, 112 S.Ct. 1377 (1992).

{¶ 39} Accordingly, as Counts 2 through 10 of the Warren County case were not lesser-included offenses of Clermont County charges, appellant was not convicted of the "same offense." Double jeopardy did not bar appellant's prosecution on Counts 2-10 in the Warren County case.

{¶ 40} In finding that appellant's convictions are not barred by double jeopardy, we reject appellant's contention that the circumstances of this case are analogous to those in *State v. Carpenter*, 68 Ohio St.3d 59 (1993). In *Carpenter*, a defendant was indicted for felonious assault arising from a stabbing. *Id.* at 59. Following plea negotiations, the defendant entered a guilty plea to the lesser-included offense of attempted felonious assault. *Id.* After he served his prison sentence and was released, the state filed an indictment charging him with murder, as the victim had passed away from injuries. The supreme court upheld the dismissal of the murder indictment, holding that "the state cannot indict a defendant for murder after the court has accepted a negotiated plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea." *Id.* at 62. In

so holding, the court noted that by pleading guilty to the attempted-felonious-assault charge, appellant reasonably anticipated he was "terminating the incident and could not be called on to account further on any charges regarding this incident." *Id.* at 61-62.

**{¶ 41}** Appellant contends that, like the defendant in *Carpenter*, he pled guilty to identity fraud in the Clermont County case with the anticipation that "his plea put an end to the incident and that he was no longer in jeopardy for his actions at Valley Ford and [Kings Chrysler Jeep Dodge]." However, the circumstances of appellant's case are distinguishable. Unlike in *Carpenter*, appellant's actions caused separate harms to separate victims. Appellant was indicted in Clermont County for using Yenke's personal identifying information and forging his signature on loan documents. Whereas, in the Warren County case, appellant was indicted and found guilty of using deception to fraudulently obtain property and cash from Valley Ford Truck and Kings Chrysler Jeep Dodge. The holding and rationale expressed in *Carpenter*, is therefore inapplicable.

**{¶ 42}** Accordingly, for the reasons set forth above, we find no merit to appellant's arguments that his convictions in Counts 2 through 10 of Warren County Court of Common Pleas Case No. 15CR31283 violated double jeopardy. Appellant's second assignment of error is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

**{¶ 43}** Assignment of Error No. 3:

**{¶ 44}** THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

**{¶ 45}** In his third assignment of error, appellant argues his convictions for identity fraud and forgery in Warren County Court of Common Pleas Case No. 15CR31555 are not supported by sufficient evidence. Specifically, appellant argues the state did not present evidence demonstrating that when he signed the name "Don Weber" on various documents relating to the Valley Ford Truck transactions, he was using the identity of his former

attorney, Don Weber, rather than the name of a fictitious person. In support of his contention that the "Don Weber" appearing on the various loan documents and retail installment contracts was a fictitious person, appellant notes that the attorney Don Weber did not suffer any negative consequences on his credit report.

{¶ 46} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### A. Identity Fraud

{¶ 47} Appellant was convicted of identity fraud of an elderly person in violation of 2913.49(B)(1), which provides that "[n]o person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * [h]old the person out to be the other person."[9] "[P]ersonal identifying information" includes, "the *name*, address, telephone number, driver's license, driver's license number, * * * social security card, social security number, birth certificate,

---

9. As the value of the "credit, property, services, debt, or other legal obligation involved in the violation" was found to be more than $7,500 but less than $150,000, the offense was a felony of the second degree. R.C. 2919.49(I)(3). Appellant has not challenged the sufficiency of the evidence as it relates to the value of the property involved.

place of employment, * * * or credit card number of a living or dead individual." (Emphasis added.) R.C. 2913.49(A).

{¶ 48} The state introduced evidence that the name and signature of "Don Weber," a supposed member of Engineered Environmental, was on various documents relating to the purchase and financing of motor vehicles from Valley Ford Truck. The state also introduced evidence that appellant had a prior association with an 85-year-old man named Don Weber. Weber testified that in 2004, he had acted as appellant's attorney. Weber denied being involved in business with appellant and stated that he had not signed any of the Valley Ford Truck documents or authorized appellant to sign those documents on his behalf.

{¶ 49} Viewing the aforementioned evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Appellant's use of Don Weber's name, coupled with appellant's prior association with Don Weber, was sufficient evidence that appellant had committed identity fraud. *See, e.g., State v. Drake*, 2d Dist. Montgomery No. 24859, 2012-Ohio-3718, ¶ 15-19.

{¶ 50} The fact that Weber was not aware of any negative consequences on his credit report as a result of appellant's actions went to the weight of the evidence, not the sufficiency. The trier of fact was entitled to weigh appellant's defense that the "Don Weber" whose signature appeared on the Valley Ford documents was a fictitious person against the state's evidence that appellant had assumed and used the identity of the attorney Don Weber.

**B. Forgery**

{¶ 51} Appellant's conviction for forgery was also supported by sufficient evidence. Pursuant to R.C. 2913.31(A)(1), a person is guilty of forgery if the person, "with purpose to defraud, or knowing that the person is facilitating a fraud, * * * [f]orge[s] any writing of another

without the other person's authority."[10]  "Writing" is defined as "any computer software, document, letter, memorandum, note, paper, plate, data, film, or other thing having in or upon it any written, typewritten, or printed matter, and any token, stamp, seal, credit card, badge, trademark, label, or other symbol of value, right privilege, license, or identification."  R.C. 2913.01(F).  "Forge" is defined as "fabricat[ing] or creat[ing], in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct."  R.C. 2913.01(G).

{¶ 52}  "[T]he phrase 'forge any writing of another without the other person's authority' encompasses situations in which a person signs the name of another, without the other's consent and with the purpose to defraud, to a document prepared by a third party."  *State v. Sprinkle*, 2d Dist. Montgomery No. 20780, 2005-Ohio-5240, ¶ 16.  *See also State v. Brown*, 10th Dist. Franklin No. 03AP76, 2003-Ohio-4762, ¶ 10.  Here, the state presented evidence that appellant signed Don Weber's name on vehicle retail installment contracts and business credit applications.  Weber testified appellant did not have authority to sign his name on these documents.  Thus, there was sufficient evidence to support appellant's conviction for forgery.  *See Brown.*

{¶ 53}  As appellant's convictions for identity fraud and forgery are supported by sufficient evidence, we overrule appellant's third assignment of error.

### IV. SPEEDY TRIAL

{¶ 54}  Assignment of Error No. 4:

{¶ 55}  THE TRIAL COURT ERRED BY BRINGING [APPELLANT] TO TRIAL AFTER

---

10. As the victim was an elderly person and the value of the property or services involved in the offense was $37,500 or more, the offense was a felony of the second degree.  R.C. 2913.31(C)(1)(c)(iii).  Appellant has not challenged the sufficiency of the evidence as it relates to the value of the property involved.

THE 90 DAY DEADLINE FOR A SPEEDY TRIAL PURSUANT TO R.C. 2945.71(C) AND (E) HAD PASSED.

{¶ 56} In his fourth assignment of error, appellant argues his statutory speedy-trial rights were violated by the state's failure to bring him to trial within the time prescribed by R.C. 2945.71. He contends that because he remained incarcerated from the date of his arrest, the "triple-count provision" set forth in in R.C. 2945.71(E) applied and the state was required to bring him to trial within 90 days.

{¶ 57} R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." However, "[i]f not timely asserted by motion prior to the commencement of trial, speedy trial rights are waived." *State v. Miller*, 12th Dist. Butler No. CA98-06-129, 1999 Ohio App. LEXIS 5515, *15 (Nov. 22, 1999). *See also State v. Cassidy*, 12th Dist. Clermont No. CA85-05-036, 1985 Ohio App. LEXIS 9443, *2 (Dec. 2, 1985); *State v. Mitchell*, 10th Dist. Franklin No. 10AP-756, 2011-Ohio-3818, ¶ 21.

{¶ 58} The record before us indicates appellant failed to file a motion to be discharged for lack of speedy trial. Appellant cannot raise a speedy trial issue for the first time on appeal. *Cassidy* at *2; *Worthington v. Ogilby*, 8 Ohio App.3d 25, 27 (10th Dist.1982); *State v. Turner*, 168 Ohio App.3d 176, 2006-Ohio-3786, ¶ 21 (5th Dist.). He has therefore waived the issue.

{¶ 59} Further, even if appellant had not waived review of this issue, his arguments are without merit. As discussed below in our resolution of appellant's fifth assignment of error, appellant's speedy-trial time was tolled and the time was properly charged to appellant pursuant to R.C. 2945.72(C) and (H). Appellant's fourth assignment of error is, therefore, overruled.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 60} Assignment of Error No. 5:

{¶ 61} TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHICH HARMED [APPELLANT].

{¶ 62} In his fifth assignment of error, appellant argues his trial counsel was ineffective for failing to file a motion to dismiss based on a violation of his statutory speedy-trial rights. Specifically, appellant contends his trial counsel was deficient for ignoring or miscalculating the 90-day speedy trial deadline and asserts that had a motion been filed, "the trial court must have dismissed" the charges with prejudice.

{¶ 63} "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Ullman,* 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17, quoting *Strickland* at 694. The failure to satisfy either the "performance" or "prejudice" prong of *Strickland* is fatal to an ineffective assistance of counsel claim. *State v. Childs*, 12th Dist. Butler No. CA2009-03-076, 2010-Ohio-1814, ¶ 49.

{¶ 64} In the present case, we find it unnecessary to discuss the "performance" prong of *Strickland*, as the record before us demonstrates appellant was not prejudiced by counsel's failure to file a motion to dismiss. Even if trial counsel had filed the motion and raised a speedy trial claim, appellant would not have prevailed on the motion as the speedy-

trial time was tolled and the time properly charged to appellant pursuant to R.C. 2945.72(C) and (H).

**{¶ 65}** The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32; *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8. "[T]he General Assembly * * * enacted Ohio's speedy-trial statutes to preserve this right." *Id.*, citing R.C. 2945.71, et seq. Compliance with these statutes is mandatory and the statutes "must be strictly construed against the state." *Id.*, citing *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12.

**{¶ 66}** R.C. 2945.71(C)(2) requires that a person charged with a felony be brought to trial within 270 days after his arrest. For purposes of computing time under the speedy-trial statute, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

**{¶ 67}** Once a defendant demonstrates he was not brought to trial within the permissible period, the accused presents a prima facie case for dismissal based on a speedy-trial violation. *Miller*, 2009-Ohio-4831 at ¶ 9, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 10 (3d Dist.). The burden then shifts to the state to prove that time was sufficiently tolled and the speedy-trial time period extended. *Id.* R.C. 2945.72 enumerates specific instances in which the time period that defendant must be brought to trial is extended and includes periods of delay caused by an accused's lack of counsel or periods of continuance caused by an accused's own motion. R.C. 2945.72(C) and (H).

**{¶ 68}** As appellant was arrested on September 2, 2015, and he remained in jail throughout the trial court proceedings, the triple-count provision of R.C. 2945.71(E) applied. At the time appellant's trial commenced on January 19, 2016, 139 days had elapsed – 49

days more than that permitted by R.C. 2945.71.[11]  However, certain portions of this time period were tolled and the time chargeable to appellant.  As the trial court noted in its November 3, 2015 Entry Continuing Trial Date, the time from appellant's arrest on September 2, 2015, until the time his first counsel, John Helbling, was appointed on September 25, 2015, tolled the speedy-trial time and such time was chargeable to appellant "due to the fact that [appellant] was repeatedly dishonest in his early representations to the Court that he would hire private counsel, but [he] did not."

{¶ 69}  The record reveals that when appellant was first arrested and arraigned, he indicated to the trial court that he had private representation.  However, no attorney entered an appearance on appellant's behalf in the case.  When appellant next appeared before the court on September 18, 2015, he represented that he was not indigent, that he did not want or need appointed counsel, and that he had a "sizeable amount" of money, "a lot of rental property," and intended to hire private counsel to represent him.  A pretrial hearing was held on September 25, 2015, at which time appellant again appeared without counsel.  The court spoke with appellant, who indicated he was having trouble getting together the funds to retain private counsel.  The court, therefore, appointed Helbling as appellant's counsel.

{¶ 70}  R.C. 2945.72(C) provides that the time in which an accused must be brought to trial may be extended by "[a]ny period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law."  Here, the 23 days that passed between appellant's arrest and appointment of counsel was properly charged to

---

11. Although time starts to run from the date of a defendant's arrest, the first day itself is not counted when computing the statutory time period.  *See State v. Halcomb*, 12th Dist. Warren No. CA94-06-055, 1994 Ohio App. LEXIS 5314, *3 (Nov. 28, 1994), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-51 (9th Dist.1991).

appellant, and the speedy-trial time period properly extended, as appellant's dishonest representations to the court about his ability to hire private counsel resulted in his delay in obtaining representation.

{¶ 71} The speedy-trial time period was also extended by trial counsel's request for a continuance. When Helbling was initially appointed as appellant's counsel, he indicated he could be ready to proceed to trial by November 2, 2015. However, on October 15, 2015, Helbling orally moved to withdraw as appellant's counsel after stating he and appellant "have some conflict going on certain issues." Helbling also explained that appellant was adamant about not waiving his speedy trial rights and Helbling was unable to adequately prepare for trial given the voluminous nature of discovery involved in the case. The trial court granted Helbling's motion to withdraw on October 20, 2015. Appellant then executed an affidavit of indigency, admitting that the did not have "access" to money or assets to hire private counsel, and on October 22, 2015, Hugh P. McCloskey, Jr. was appointed as appellant's counsel.

{¶ 72} On October 28, 2015, appellant and his new counsel appeared before the court for pretrial. At this time, McCloskey represented to the trial court that he would not be able to effectively and competently represent appellant unless the November 2, 2015 trial date was continued to allow him time to review the more than 6,000 exhibits shared by the state during discovery and to prepare for the 45 witnesses the state expected to call at trial. McCloskey indicated that if granted a short extension of time, until January 2016, he would have time to prepare for trial. Appellant was opposed to a continuance and stated he was unwilling to waive his right to a speedy trial.

{¶ 73} The trial court continued the trial date to January 19, 2016, after noting that it had "a duty to adequately protect both the [appellant's] right to a speedy trial and his right to effective assistance of counsel." The court specifically found that the continuance was

"reasonable," "necessary," and "in the [appellant's] best interest" as it provided McCloskey the time he needed to prepare for trial. The court determined that the time between the October 28, 2015 request for the continuance and the January 19, 2016 trial date – 83 days – was chargeable to appellant pursuant to R.C. 2945.72(H).

{¶ 74} Although appellant does not believe this time should be charged to him, as appellant believes Helbling, his "initial trial counsel, was ineffective by misrepresenting to the court that he could be ready for trial within the [s]peedy [t]ime deadlines and then later stating he could not," we find otherwise. R.C. 2945.72(H) provides that the time within which an accused must be brought to trial may be extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." The supreme court has recognized that "a defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *State v. McBreen*, 54 Ohio St.2d 315, 320 (1978). "[I]t is reasonable for a court to continue the matter to give recently appointed defense counsel time to prepare for trial." *State v. Redelman*, 12th Dist. Clinton No. CA2012-04-010, 2013-Ohio-657, ¶ 24, citing *State v. McRae*, 55 Ohio St.2d 149 (1978). Therefore, the 83 days that passed between McCloskey's request for a continuance and the date trial began were properly charged to appellant.

{¶ 75} As the speedy-trial time period was tolled pursuant to R.C. 2945.72(C) and (H), and the time chargeable to appellant, we conclude appellant was brought to trial within the time limitation set forth by R.C. 2945.71. Appellant therefore cannot establish that he was prejudiced by trial counsel's decision not to file a motion to dismiss as the filing of such a motion would have been futile. Accordingly, we find that trial counsel's failure to file a motion to dismiss did not constitute ineffective assistance of counsel. Appellant's fifth assignment of

error is overruled.

**{¶ 76}** Judgment affirmed.


S. POWELL and M. POWELL, JJ., concur.