[Cite as *State v. Baugh*, 2018-Ohio-857.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2017AP030007 |
| | : | |
| KENNETH J. BAUGH | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Tuscarawas County
                                Court of Common Pleas, Case No. 2016
                                CR 07 0183



JUDGMENT:                       AFFIRMED



DATE OF JUDGMENT ENTRY:         March 7, 2018



APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

MICHAEL J. ERNEST                        AARON KOVALCHIK
Tuscarawas Co. Prosecutor's Office       116 Cleveland Ave. NW
125 E. High Ave.                         Canton, OH 44702
New Philadelphia, OH 44663

*Delaney, P.J.*

{¶1}   Appellant Kenneth J. Baugh appeals from the February 24, 2017 judgment entry of the Tuscarawas County Court of Common Pleas.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

*Confrontation at Save-A-Lot*

{¶2}   This case arose on June 21, 2016, when appellant encountered Amy Baker at a Save-A-Lot in Uhrichsville, Ohio.  Appellant and Baker had been in a relationship but Baker now had a new boyfriend, Axel Henry.  Accounts differed about how these parties ended up at Save-A-Lot, but sometime in the early evening of June 21, appellant, Baker, and Henry confronted each other in the parking lot.  Also present were Baker's father and uncle.

{¶3}   Baker and Henry were seated in her father's car and appellant walked up. Henry got out and confronted appellant; an argument ensued.  Baker also got out of the car.  At some point, appellant brandished a gun.  Appellant and Baker argued, appellant reportedly struck Baker at least once in the face, and Baker "defended herself."  Henry later told police appellant pointed the gun at him and at Baker, and Henry believed the gun to be a ".9 millimeter."

{¶4}   A Save-A-Lot employee was on a break outside the store when she observed the fight.  She saw two men arguing and a woman trying to break them up.  The employee recognized the woman as Amy Baker.  One of the men struck Baker in the face at least once, but the employee did not know his name at first; she recognized him as a regular customer of the store.  She saw the same man draw a gun and heard him threaten to shoot Baker.

{¶5} The employee called 911 from a store telephone and reported a man pulled a gun and took off running in the direction of a school. Witnesses in the background of the call said the man's first name was "Kenny" and the employee provided his physical description.

*Witnesses observe Appellant's Flight*

{¶6} A male witness who lived on Orchard Street was sitting on his front porch just after 7:00 p.m. when he noticed a man walking south on Orchard on the opposite side of the street. It was still daylight and the witness didn't notice anything unusual about the man. The witness then saw a Uhrichsville police car traveling south on Orchard, slowly as though the officer was looking for someone. The police car suddenly sped up and turned onto Franklin. A few moments later, the witness heard three distinct gunshots and took cover behind his porch bannister.

{¶7} A female witness who lives on Herrick Street was outside on her front porch that evening. She didn't know appellant's name but recognized him because he frequently walked past her house on his way to Save-A-Lot. She knew appellant lived on Bank Street. This evening, she heard "at least one" gunshot and observed appellant running through bushes and between apartment buildings across the street from her house. She wondered why appellant was running but several minutes later observed police officers walking down the street with weapons drawn.

{¶8} A second male witness was living with his brother on Orchard Street on June 21, 2016. That evening, the witness's pickup truck was parked on the street in front of the residence. The witness was moving lumber from the back of the pickup truck to the rear yard of the house. On his first trip, he observed an older man in "raggedy clothes"

walking up the street. When he came back for a second load, he saw a police car drive by with its lights on. The witness observed that "[his] neighbor's bush started shaking" and a man came out of the bush holding a gun.

{¶9} The witness's eyes were fixed on the gun. He took off running toward his truck to take cover. As he started running, a police officer came around the corner from Franklin, on foot, and the witness heard gunshots. He dove down toward the front tire of his truck. He didn't recall how many shots were fired, but he heard "multiple" shots and the noise of bullets striking objects. The witness kept his eyes on the police officer from behind the truck. He couldn't see the gunman. He stayed down behind the truck until the officer told him it was safe to go into the house.

{¶10} Later that night, police were in the street collecting evidence and they showed the witness a mark on the rim of his truck tire where it was struck by a bullet.

{¶11} The witness acknowledged he did not look closely at the gunman's face because his attention was locked on the gun, but the man who came out of the bushes with the gun was dressed the same as the man who had walked down the street a few minutes before.

{¶12} As of June 21, 2016, appellant was living in a house at 516 Bank Street with several other people, including Bryan Balder and Elena Poorman. Poorman testified that on June 21, 2016, appellant said he was going to meet Baker at Save-A-Lot and he was upset when he left. Poorman saw appellant again about 20 minutes later, walking quickly between apartment buildings, headed toward the woods. Very shortly after she saw appellant, police were at the house looking for him.

*Investigation and Shots Fired*

{¶13} Ptl. William Ackerman and Ptl. Adam Gunnish are two City of Uhrichsville police officers who responded to the call of a man with a gun at Save-A-Lot. Witnesses told the officers appellant fled the scene; Gunnish took off in pursuit and Ackerman remained behind to take statements.

{¶14} Gunnish was in a police car traveling southbound on Orchard when he saw appellant, who matched the description given, walking quickly near the 300 block. Gunnish accelerated and appellant turned and noticed him. Appellant took off running and Gunnish lost sight of him on Franklin. He knew appellant was hiding in the bushes, so he stopped the car and got out. Gunnish did not have his weapon drawn. He yelled, "Police, you better get out here now" but appellant did not respond. Gunnish heard movement in the bushes and appellant emerged, running at a slow sprint which enabled Gunnish to close the distance between them quickly.

{¶15} In front of a house on Orchard Street, appellant turned and fully looked at Gunnish. Prior to this moment, Gunnish had not seen a gun, but now appellant fired a shot at him. Gunnish began "sidestepping" toward a house as appellant watched him and tracked his movements with the gun. Appellant fired a second, deliberate shot at the officer, then a third.

{¶16} As Gunnish drew his own weapon, he noticed the witness crouched behind the tire of the pickup truck. He decided to take cover because bystanders were in the area. He radioed "shots fired" as appellant continued to flee westward. Gunnish ran back to his patrol car but was unable to retrieve a shotgun. He tracked appellant on foot and

made contact with the Herrick Street witness, who told him she saw a man running between apartments toward the woods.

{¶17} At that point, Gunnish's pursuit of the suspect ceased.

{¶18} In the meantime, Ptl. Ackerman had responded to the intersection of Orchard and Franklin in response to Gunnish's call of shots fired. Ackerman searched for the suspect on foot but didn't find him. Ackerman began to collect evidence after Gunnish told him appellant shot at him three times. Ackerman and Gunnish located one spent casing.

{¶19} The officers learned the suspect's first name was "Kenny" and Gunnish identified appellant from a B.M.V. photo. They went to appellant's address on Bank Street and made contact with Bryan Balder. Officers found a box of .40 caliber ammunition of various makes in appellant's bedroom drawer. Appellant was not present at the Bank Street residence; nor was he found in a vacant house next door.

{¶20} A witness reported appellant was moving across a field toward railroad tracks. Sgt. Brandon McCray and Ptl. Michael Hickman, a K-9 handler, arrived on the scene and began tracking appellant. The K-9, Ricon, indicated strongly on a scent track heading toward the railroad tracks. Hickman followed the track with Ricon leashed while McCray provided cover. It was now dusk and the woods were dark. Hickman saw the silhouette of an individual walking into the woods and ordered him to stop, but the person didn't comply.

{¶21} The officers dropped back and set up a perimeter around the area of the woods where they knew appellant was concealed. Hickman decided to advance into the woods with Ricon on a 30-foot leash. The dog entered a clearing ahead of the officer and

engaged something; Hickman turned on his flashlight and saw appellant sitting on the ground in the middle of a briar patch. Ricon was biting appellant on the inside of his left thigh.

{¶22} Appellant sat on his hands and refused to comply with orders to show them. Hickman had his service weapon out and was assisted by McCray. Hickman testified that appellant was strangely silent as he "took the bite" of the dog, saying nothing but refusing to show his hands. Eventually appellant relented and showed his hands, screaming "get the dog off."

{¶23} No gun was found in appellant's vicinity. A second K-9, Zane, trained in detection of explosives, was brought in by Ptl. Chris Heslop of the Canton Police Department. Zane located ammunition in the area where appellant had been found. Eight live rounds were recovered. Police went into the woods the next day with a metal detector but the gun was never found.

{¶24} Additional evidence was recovered from the scene of the three shots fired. Gunnish and Ackerman had already located one spent shell casing, and Zane found the two remaining spent casings nearby.

{¶25} Appellant was cuffed and brought out of the woods dirty and disheveled; he required medical attention for the dog bite. As McCray walked him out of the woods, he Mirandized appellant, who was asking questions about why he was under arrest. Appellant said he went into the woods to sit and drink but officers testified there was no evidence found to corroborate the statement. Officers asked where the gun was and appellant said he wanted an attorney. Officers testified appellant therefore invoked his right to remain silent and questioning ceased.

{¶26} Ackerman later encountered appellant at the Tuscarawas County Jail for the purpose of obtaining a D.N.A. sample.  Appellant told Ackerman he should "be the next one to catch a bullet."   No D.N.A. profile was recovered from the rounds of ammunition so no comparison was undertaken with appellant's sample.  A gunshot residue test was also inconclusive.

*Indictment, Trial, and Conviction*

{¶27} Appellant was charged by indictment as follows: Count I, attempted aggravated murder pursuant to R.C. 2923.02, R.C. 2903.01(E)(2), R.C. 2903.01(F), a felony of the first degree;[1] Count II, felonious assault pursuant to R.C. 2903.11(A)(2) and R.C. 2903.11(D)(1)(a), a felony of the first degree; Count III, having weapons under disability pursuant to R.C. 2923.13(A)(2) and R.C. 2923.13(B), a felony of the third degree; County IV, assault pursuant to R.C. 2903.13(A) and R.C. 2903.13(C), a misdemeanor of the first degree; and Count V, aggravated menacing pursuant to R.C. 2903.21(A) and R.. 2903.21(B), a misdemeanor of the first degree.  Counts I, II, and III are each accompanied two firearm specifications, the first pursuant to R.C. 2941.1412(A) and the second pursuant to R.C. 2941.145(A).

{¶28} Appellant's arrest date is June 21, 2016.  Pursuant to an evidentiary hearing held on July 25, 2016, appellant remained in jail and bail was denied.

{¶29} Appellant entered pleas of not guilty and a pretrial was scheduled for August 16, 2016.

---

[1] Count I was originally charged as a felony of unclassified degree but was amended with approval of the trial court to a felony of the first degree.

{¶30} On August 11, 2016, appellant filed a demand for discovery and request for a bill of particulars.

{¶31} In a memorandum of the pretrial on August 16, 2016, the trial court noted defense counsel would be filing a limited time waiver as follows:

> * * * *.
>
> According to [the prosecutor's] calculations, the last date for trial of the Indictment is 9/19/2016. [Defense trial counsel] communicated to [the prosecutor] and me that he will be filing, prior to the close of business on Friday, 8/19/2016, a limited (ninety (90) days) time waiver of [appellant's] **Statutory Speedy** rights under **R.C. 2925.71(C)(2)**. Consequently, I am apprising the Court Administrator's Office, by that office receiving a photocopy of this letter, that it is to schedule this Indictment for resolution as follows:
>
> **Pre-Trial Conference** in approximately thirty (30) days on a date and at a time when [defense trial counsel] and [the prosecutor] are both available.
>
> **Status** hearing and **Jury Trial** to be scheduled prior to 11/15/2016 upon dates [the prosecutor] and [defense trial counsel] are available.
>
> The scheduling of the **Pre-trial Conference** and **Status** hearing and **Jury Trial** will be by **Notice of Assignment**, again, after prior consultation with your respective offices by the Court Administrator's staff.

(Emphasis in original).

\* \* \* \*.

{¶32} A Notice of Assignment filed August 18, 2016 states a pretrial conference was scheduled for September 21, 2016; a status conference for October 26, 2016; and jury trial for October 27, 2016.

{¶33} Also filed on August 18, 2016, by appellant, was a "limited time waiver," consenting to an additional waiver of time for trial "by an additional 90 days the same resulting with the date for commencement of Trial being on or before December 19, 2016."

{¶34} A pretrial conference occurred on September 21, 2016 and was memorialized, noting a status conference date of October 26, 2016 and jury trial date of October 27, 2016.

{¶35} On October 26, 2016, the day before the scheduled trial, the trial court entered a judgment entry noting that the previous day defense trial counsel faxed a motion to continue the status conference and jury trial. The entry further noted the motion to continue was granted and "constitute[d] an enlargement of time for trial pursuant to R.C. 2945.71(C)(2) under the authority of R.C. 2945.72(E) and (H)." Further, the trial court found the court administrator should reschedule the status conference and jury trial "on the next available dates" based upon the calendars of the trial court, prosecutor, and defense trial counsel. The entry further ordered that the time limits were extended, if necessary, beyond December 19, 2016 (the date certain of appellant's time waiver).

{¶36} The record does not contain a faxed motion to continue as described above, but does contain a motion to continue filed by defense trial counsel on October 31, 2016, noting defense trial counsel needed additional time to review discovery, appellee had no

objection to the continuance, and a limited time waiver had been filed until December 19, 2016.

{¶37} On November 8, 2016, a Notice of Assignment was filed noting a status conference to be held on January 23, 2017 and a jury trial to begin on January 24, 2017.

{¶38} On December 9, 2016, appellant filed a request for status conference "at the earliest time convenient to the Court." Accordingly, on December 13, 2016, the trial court scheduled a status conference for December 20, 2016 via judgment entry. The record is silent as to the discussion at the pretrial other than a memorandum dated December 20 stating in pertinent part "jury trial to remain."

{¶39} On January 9, 2017, appellant filed a pro se letter with the trial court asking why the trial was set beyond the "date of [his] extension." The trial court responded to appellant with a copy of the judgment entry of October 26, 2017, to which appellant replied on January 13, 2017 with another pro se letter stating he did not consent to the motion to continue.

{¶40} On January 24, 2017, appellant filed a motion to dismiss for failure to comply with speedy trial time limits. Immediately prior to trial, a hearing was held and the "court scheduler" testified that pursuant to the scheduling order of the trial court, she contacted both counsel and several dates were rejected before January 24 was mutually selected. She was aware of the limited time waiver, but the trial court's calendar could not accommodate a jury trial prior to December 19, and defense trial counsel did not object to selection of the date of January 24. At the conclusion of the evidentiary hearing, the trial court overruled the motion to dismiss.

{¶41} The matter proceeded to trial by jury on January 24, 2017, and appellant was found guilty of Counts I, II, III, and V with the accompanying firearm specifications. Appellant was found not guilty upon Count IV, assault.

{¶42} On February 24, 2017, appellant appeared before the trial court for sentencing and the trial court imposed an aggregate prison term of 16 years.

{¶43} Appellant now appeals from the trial court's judgment entry of conviction and sentence dated February 24, 2017.

{¶44} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶45} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶46} "II. APPELLANT'S CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION WAS VIOLATED WHEN TESTIMONY WAS GIVEN CONCERNING HIS REQUEST FOR AN ATTORNEY."

{¶47} "III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO DISMISS THE INDICTMENT WHEN APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED."

{¶48} "IV. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

**ANALYSIS**

I.

{¶49} In his first assignment of error, appellant argues his convictions are against the sufficiency and manifest weight of the evidence.  We disagree.

{¶50} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶51} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering

a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶52} Appellant was found guilty of one count of attempted aggravated murder[2] with two firearm specifications;[3] one count of felonious assault[4] with firearm specifications;[5] one count of having weapons under disability[6] with firearm specifications;[7] and one count of aggravated menacing.[8]

---

[2]    R.C. 2903.01(E)(2), aggravated murder, states: "No person shall purposely cause the death of a law enforcement officer whom the offender knows or has reasonable cause to know is a law enforcement officer when * * * [i]t is the offender's specific purpose to kill a law enforcement officer."
     R.C. 2923.02(A), attempt, states: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

[3]    The first firearm specification pursuant to R.C. 2941.1412(A) states:  Imposition of a **seven-year mandatory prison term** upon an offender under division (B)(1)(f)(i) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender discharged a firearm at a peace officer or a corrections officer while committing the offense. * * * *. (Emphasis added).
     The second firearm specification pursuant to R.C. 2941.145(A) states:   (A) Imposition of a **three-year mandatory prison term** upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. * * * *. (Emphasis added).

[4]    R.C. 2903.11(A)(2), felonious assault, states: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

[5]    See footnote 3, supra.

[6]    R.C. 2923.13(A)(2), having weapons under disability, states: "Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence * * *."

[7]    See footnote 3, supra.

[8]    R.C. 2903.21(A), aggravated menacing, states: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the

{¶53} Appellant first argues his conviction for aggravated menacing is against the sufficiency and manifest weight of the evidence because Amy Baker, the purported victim, was the aggressor in the confrontation and appellee did not prove beyond a reasonable doubt that Baker believed appellant would harm her. Upon our review of the record, Baker testified appellant pulled a gun and "exchanged words" with her, then punched her in the face. The Save-A-Lot employee saw appellant with the gun and heard him threaten to shoot Baker. The determination as to whether statements are threats of serious physical harm is to be made by the trier of fact, in this case, the jurors. *State v. Davis*, 5th Dist. Stark No. 2001CA00186, unreported, 2002 WL 221069, *2 (Feb. 11, 2002). It was within the jury's province to determine if appellant's statements were meant to convey a threat of serious physical harm. *Id.*, citing *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), cert. denied, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990).

{¶54} As to Baker's belief that appellant would cause her serious physical harm, the credibility of the trial witnesses was a matter for the jury to determine. *State v. Yarbrough,* 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216. We find the jury could reasonably have found all of the elements of aggravated menacing established beyond a reasonable doubt. In light of the uncontroverted evidence, we cannot find the jury lost its way in finding appellant guilty of aggravated menacing. *State v. Ford*, 5th Dist. Stark No. 2014CA00145, 2015-Ohio-4093, ¶ 26.

{¶55} Appellant next argues his conviction of having weapons under disability is against the sufficiency and manifest weight of the evidence because no evidence at trial

person or property of the other person, the other person's unborn, or a member of the other person's immediate family. * * * *."

connected him to any firearm. To the contrary, several of appellee's eyewitnesses testified appellant possessed and brandished a gun, from the confrontation at Save-A-Lot to firing on the police officer. Additionally, Gunnish identified appellant as the man who fired on him three times.

{¶56} Appellant further argues his felonious assault conviction is against the sufficiency and manifest weight of the evidence because there is no evidence linking him to a firearm, but alternatively if he did fire shots at Gunnish, he wasn't trying to harm the officer but to avoid apprehension. A person acts "knowingly" when, "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B); *State v. Thomas*, 5th Dist. Stark No. 2010CA336, 2011-Ohio-4441, ¶ 18. Gunnish testified that appellant turned to him and faced him fully, shot at him once, "tracked" him as he ran, and shot twice more. Appellant has presented no authority suggesting shooting at a police officer three times is not a knowing attempt to cause serious physical harm. See, *State v. Smalls*, 5th Dist. Stark No. 2000CA00133, 2001 WL 520977, *3 (May 7, 2001) [testimony established appellant fired three rounds directly at police officers sufficient to prove felonious assault and not against manifest weight of evidence].

{¶57} Finally, appellant contends his conviction for attempted aggravated murder is against the sufficiency and manifest weight of the evidence because he was not definitively linked to any firearm at trial and appellee did not prove he acted with the specific purpose to kill Gunnish. As we noted above, Baker, Henry, the Save-A-Lot employee, and Gunnish testified appellant had a gun. The neighborhood witnesses saw appellant fleeing the scene shortly after the gunshots. Gunnish testified that appellant

could have "dumped the bullets" but instead appellant fired directly at him, not once but three times. He tracked Gunnish's movements as he fired.

{¶58} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. His first assignment of error is overruled.

II.

{¶59} In his second assignment of error, appellant argues his constitutional right against self-incrimination was violated at trial. We disagree.

{¶60} During the direct examination of Sgt. Brandon McCray by appellee, McCray described finding appellant in the woods with the assistance of Sgt. Hickman and K-9 Ricon. The K-9 bit appellant during the apprehension and McCray called an ambulance. As McCray and Hickman led appellant out of the woods, McCray Mirandized appellant because appellant asked why he was being arrested and they discussed the shooting, which appellant said he knew nothing about. McCray asked appellant where the gun was and appellant replied he didn't know what McCray was talking about. When McCray asked again, appellant requested counsel and questioning ceased.

{¶61} At trial, after McCray described this interaction, the prosecutor asked McCray if he asked appellant where the gun was. Appellant objected to the question because he was in custody and invoked his right to remain silent. (T. III, 343). The trial court questioned McCray about the sequence of events and McCray stated that he had asked appellant several times where the gun was in case it remained in the woods. Appellant did not answer and said he wanted an attorney so questioning ceased. (T. III, 344-345). The trial court asked defense counsel if this satisfied his objection and defense

trial counsel replied, "Not entirely."   The trial court noted counsel could cross-examine McCray.  (T. III, 345).

{¶62} The prosecutor then asked McCray again whether appellant revealed the location of the gun.   McCray clarified that questioning about the gun occurred after appellant was Mirandized but before he invoked his right to remain silent.   Appellant's only response to questions about a gun were that he "didn't know what [the officers] were talking about," and he had gone into the woods to sit and drink. After appellant requested an attorney, all questioning stopped.  (T. III, 346).

{¶63} Appellant summarily argues that his right against self-incrimination was violated because the jury was permitted to use his silence against him.  In *Doyle v. Ohio*, the United States Supreme Court stated, "* * * [I]t would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).  The Court reaffirmed its holding in *Doyle* in *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), noting "[i]n *Doyle*, we held that Miranda warnings contain an implied promise, rooted in the Constitution, that 'silence will carry no penalty.'" *Wainwright* at 295, quoting *Doyle* at 618. The *Wainwright* court further stated at 295, "[w]hat is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized." (Emphasis added).  In the instant case, appellant's silence on the matter of the gun arose during direct examination of the lead investigator about steps taken during appellant's apprehension and the investigation.  The silence itself was not used as evidence of appellant's guilt.

{¶64} Upon our review of the record, we find that the trial court did not abuse its discretion in overruling appellant's objections. Appellee did not use appellant's post-arrest silence for impeachment purposes in cross-examination or in closing argument. *State v. Mosley*, 5th Dist. Stark No. 2001CA00142, 2002 WL 358651, *5 (March 4, 2002), citing *Doyle*, supra. Nor did the prosecution ever attempt to make evidentiary use of appellant's silence and/or request for counsel as evidence of appellant's guilt. *Id.*, citing *Wainwright*, supra; see also *State v. Schirtzinger*, 5th Dist. Licking No. 3348, 1988 WL 83507 (Aug. 3, 1988).

{¶65} The record in this matter "discloses no intentional, concerted effort on the part of the prosecution to employ the post-arrest comment in any prejudicial manner." See *Schirtzinger*, supra.

{¶66} The exchange between the prosecutor and McCray was not for impeachment purposes, therefore we do not find a clear and unambiguous violation of *Doyle. State v. Riggenbach*, 5th Dist. Richland No. 05CA81, 2006-Ohio-2725, ¶ 58, citing *State v. Leach,* 102 Ohio St.3d 145, 2004–Ohio–2147, 807 N.E.2d 335. "The gravamen of this due-process issue is whether the post-arrest, post-*Miranda* silence was used by the state as substantive evidence of guilt." *Id.* We find that it was not. The context of the questioning explained steps taken in the police investigation: appellant had purportedly brandished a gun and shot at an officer, and after his apprehension police continued to search for the gun with a K-9 and a metal detector. Whether appellant was asked about the location of the gun is an obligatory explanation of a step in the investigation, not substantive evidence of appellant's guilt. See*, State v. Gooden*, 8th Dist. Cuyahoga No. 82621, 2004-Ohio-2699.

{¶67} We find the evidence in the form of McCray's testimony was not offered as substantive evidence of guilt and did not violate *Doyle* and its progeny. *Riggenbach*, supra, 2006-Ohio-2725 at ¶ 60.

{¶68} Appellant's second assignment of error is overruled.

III.

{¶69} In his third assignment of error, appellant argues the trial court violated his right to a speedy trial.  We disagree.

{¶70} Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd,* 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978).  "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay,* 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980).

{¶71} Our review of a trial court's decision regarding a motion to dismiss based upon a violation of the speedy-trial provisions involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122, ¶ 11. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. *State v. Taylor*, 5th Dist. Richland No. 16 CA 17, 2016-Ohio-5912, ¶ 43, citing *Larkin*, supra.  With regard to the legal issues, however, we apply a *de novo* standard of review and thus freely review the trial court's application of the law to the facts. *Id.* When reviewing the legal issues presented in a speedy-trial claim, we

must strictly construe the relevant statutes against appellee. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶ 12.

{¶72} Appellant was arrested on June 22, 2016. The day of arrest is not counted when computing the time within which a defendant must be brought to trial. *State v. Lautenslager*, 112 Ohio App.3d 108, 110, 677 N.E.2d 1263 (3rd Dist.1996); R.C. 2945.71; Crim.R. 45(A). His jury trial commenced on January 24, 2017, or 215 days later. We find, however, that the speedy-trial clock was effectively tolled for several reasons.

{¶73} The most serious offense appellant was charged with was a felony of the first degree. A person charged with a felony must be brought to trial within 270 days unless the right to a speedy trial is waived. R.C. 2945.71(D)(2). If a person is held in jail in lieu of bond, then each day that the suspect is in custody counts as 3 days. R.C. 2945.71(E). Appellant remained incarcerated throughout the proceedings, therefore the state had 90 days to try him, subject to any tolling events. Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶74} The issue posed by appellant's argument is, what is the effect of his motion to continue which was transmitted to the court on October 25, 2016 and granted by judgment entry on October 26, 2016? We note appellant's argument on appeal omits

mention of his own motion to continue and relies solely upon his limited time waiver of August 18, 2016.[9]

{¶75} The resulting entry of the trial court, filed October 26, noted the motion to continue was granted and "constitute[d] an enlargement of time for trial pursuant to R.C. 2945.71(C)(2) under the authority of R.C. 2945.72(E) and (H)." Further, the trial court found the court administrator should reschedule the status conference and jury trial "on the next available dates" based upon the calendars of the trial court, prosecutor, and defense trial counsel. The entry further orders that the time limits are extended, if necessary, beyond the date of December 19, 2016 stated in the limited time waiver. Appellant did not object to the trial court's judgment entry.

{¶76} Five days later, on October 31, 2016, appellant filed the motion to continue, which states defense trial counsel needed additional time to review discovery and appellee had no objection to the continuance. The motion further states, "There is a limited time waiver in this matter currently extending the time for commencement of Trial through December 19, 2016." The motion does not refer to the trial court's judgment entry of October 26. Appellant's position now is that he only waived time until December 19, but a review of the record indicates the trial court's resulting judgment entry, and

---

[9] Appellant also cites the two pro se letters to the trial court asking about the trial date, which we do not count as tolling events. See, *State v. Morgan*, 5th Dist. Ashland No. 17-COA-008, 2017-Ohio-9142, --N.E.3d--, ¶ 51. A criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel, but those two rights are independent of each other and may not be asserted simultaneously. *Id.*, citing *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32, citing *Parren v. State*, 309 Md. 260, 269, 523 A.2d 597 (1987). We therefore find the letters to be inconsequential to the speedy-trial analysis.

appellant's failure to object thereto, effectively tolled time until the date selected at the mutual convenience of appellant and appellee.

{¶77} Speedy-trial time requirements may be tolled by certain events listed in R.C. 2945.72, including "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(E). R.C. 2945.72(H) provides the time within which an accused must be brought to trial may be extended by the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion. Two such tolling events were cited by the trial court in the instant case in the meticulous notes and entries documenting the pretrials and granting the motion to continue. The trial court noted in the October 26 entry, *which continued the trial upon appellant's October 25 motion*, that it "constitute[d] an enlargement of time for trial pursuant to R.C. 2945.71(C)(2) under the authority of R.C. 2945.72(E) and (H)." No objection was raised.

{¶78} Moreover, R.C. 2945.02 permits the trial court to extend speedy trial time as long as the length of time is reasonable and the reason for the continuance is indicated in the judgment entry. "[W]here the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof, such a continuance will be upheld." *State v. Myers,* 97 Ohio St.3d 335, 2002-Ohio-6658*, ¶* 62. In the instant case, the testimony of the "court scheduler" established that upon appellant's motion to continue, the trial court's calendar could not accommodate jury trial by December 19; she worked with both counsel to find the next available date; and defense trial counsel acquiesced in the selection of January 24.

{¶79} To determine whether a delay is so excessive as to offend the federal constitutional right to a speedy trial, courts balance the following factors: (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant asserted the right, and (4) whether prejudice to the defendant resulted. *Barker v. Wingo*, 407 U.S. 514, 530-533, 92 S.Ct.2182, 33L.Ed.2d 101 (1972); *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 38.  Extending the trial to January 24, upon appellant's motion to continue, is not excessive; the matter was continued for 36 days beyond December 19, upon appellant's motion, without objection, and without prejudice to appellant.

{¶80} Appellant's argument regarding the speedy trial issue is summary and asserts only that appellant should have been tried by December 19.  Based upon our review of the record, we find the trial court more than adequately established a reasonable basis for continuing the trial beyond December 19 pursuant to R.C. 2945.72(E) and (H). Appellant's third assignment of error is therefore overruled.

IV.

{¶81} In his fourth assignment of error, appellant argues he received ineffective assistance of defense trial counsel.  We disagree.

{¶82} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. See, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶83} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶84} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the Strickland test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶85} Appellant cites trial counsel's failure to object to the continuance past December 19. We note this court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987). The basis for the motion to continue was to allow sufficient time for defense counsel's trial preparation. In light of our discussion of appellant's third assignment of error, it is evident that even if defense trial counsel had objected to the extension beyond December 19, the objection would have been overruled because of the trial court's schedule.

{¶86} Additionally, despite appellant's inquiries about why the trial date was extended beyond December 19, the January 24 date was arrived at with consent of counsel. Appellant is bound by his counsel's waiver of speedy trial rights, even though the waiver might have been executed without his consent. *State v. Taylor*, 98 Ohio St.3d

27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 33, citing *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593, syllabus (1978).

{¶87} Appellant next argues defense trial counsel should have moved for a mistrial or requested a curative jury instruction following McCray's testimony about appellant's silence in response to questions about the gun, as discussed in the second assignment of error. Again, we note counsel may have made a deliberate strategic decision in not requesting a jury instruction. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Further, even if counsel arguably erred in not requesting a mistrial, appellant was not prejudiced thereby because we have already found no prejudice resulted to appellant from the challenged testimony. See, *State v. Ross*, 5th Dist. Stark No. 2004CA00233, 2005-Ohio-1435.

{¶88} Finally, appellant argues defense trial counsel was insufficiently prepared for trial because he commented in reference to the video exhibit that it "went on for a while" and he "didn't really sit and listen." Appellant did not provide a citation to the record for this comment per App.R. 16(A)(7) but upon our review we find the statement to have been taken out of context (T. IV, 414). During cross-examination of McCray, a question arose as to whether dashcam video existed of any of the activity at Save-A-Lot. During a conversation outside the hearing of the jury, the prosecutor stated one dashcam video existed and it had been provided in discovery. Defense trial counsel made the cited statement during a general discussion about the parties' agreement that the video was not helpful because the camera was running after the incident occurred and contained

long periods of inactivity. The statement does not establish an error by defense trial counsel, much less prejudice to appellant.

{¶89} Appellant's fourth assignment of error is overruled.

## CONCLUSION

{¶90} Appellant's four assignments of error are overruled and the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.