[Cite as *State v. Cummings*, 2024-Ohio-3356.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-12-018 |
| | : | O P I N I O N |
| - vs - | | 9/3/2024 |
| | : | |
| JEFFREY A. CUMMINGS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20220249

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Caleb Johnson, and The CMW Law Firm and Anthony D. Maiorano, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Jeffrey A. Cummings, appeals his conviction in the Fayette County Court of Common Pleas for assault on a peace officer, a fourth-degree felony.

{¶ 2} Cummings, believing his wife was having an affair, assaulted his wife's suspected paramour and took his vehicle. The police were called, and they found Cummings on his property intoxicated and yelling. Upon being approached by Deputy Ennis, who is African American, Cummings began threatening Deputy Ennis and spewing

racially charged comments. Cummings was subsequently arrested. During transportation to the jail, Cummings cursed profusely and kicked the car door and window.

{¶ 3} Upon arriving at the sheriff's office, a restraint chair was brought out. While several deputies worked to fasten Cummings into the chair, Cummings kicked at Deputy Ennis as Ennis attempted to secure the leg straps. At that point, Deputy Ennis stood up and walked away briefly before returning to the restraint chair to assist the other officers. After Deputy Ennis again reached down and grabbed Cummings' legs, the other officers huddled around the chair, attempting to restrain Cummings. Cummings continued to struggle to varying degrees before forcefully kicking up at Deputy Ennis again. The ensuing struggle between Cummings and the officers resulted in Cummings' chair falling backwards. Cummings' right leg, used to kick at Deputy Ennis, remained in the air until officers grabbed it and strapped it to the chair. Deputy Ennis testified at trial that Cumming's foot scraped his chin and under his chin. Security videos which clearly captured the struggle were admitted into evidence.

{¶ 4} Cummings was indicted for grand theft of a motor vehicle, assault, and assault on a peace officer. His trial was set for June 15, 2023. On June 8, 2023, however, the trial court requested a continuance of the trial date during a phone conference with counsel. The trial court's entry stated only that neither party objected and set a new trial date of August 15, 2024. On August 14, 2024, however, the trial court, again after consulting counsel, continued the jury trial to October 19, 2023 sua sponte. Neither continuance entry indicates the reasons why the continuances took place.

{¶ 5} The case proceeded to trial on October 19, 2023, but the State tried only the assault on a peace officer charge. Cummings was found guilty of that charge, and he was sentenced to fifteen months in prison. Cummings now appeals.

{¶ 6} On appeal, Cummings raises a single assignment of error.

**{¶ 7}** [CUMMINGS'] TRIAL COUNSEL WAS INEFFECTIVE.[1]

**{¶ 8}** To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness." *Id.* at 688. When making this determination, the reasonableness of counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Only when counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has counsel engaged in deficient performance. *Id.* at 687.

**{¶ 9}** To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id.* "A defendant's failure to make a sufficient showing of either prong of the *Strickland* inquiry is fatal to his claim of ineffective assistance." *State v. Lloyd*, 2022-Ohio-4259, ¶ 31, citing *id.* at 697.

**{¶ 10}** Within this assignment of error, Cummings presents two issues for review and argument regarding his trial counsel's performance.

**{¶ 11}** FIRST ISSUE: DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN ATTORNEY SCRANTON FAILED TO FILE A MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATION.

---

1. Any attorney who does not prevail at trial can be considered "ineffective." While Cummings' assignment of error fails to state a violation of law or any prejudice to Cummings resulting from it, we will nevertheless address Cummings' argument contained in the body of his briefing.

{¶ 12} First, Cummings argues that his trial counsel was ineffective by failing to file a motion to dismiss for a speedy trial violation. Had he done so, Cummings asserts his charges would have been dismissed.[2]

{¶ 13} The Sixth Amendment to the United States Constitution as well as Article 1, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. Consistent with these constitutional mandates, R.C. 2945.71(C)(2) states an individual charged with a felony shall be brought to trial within 270 days of their arrest. However, R.C. 2945.72 lists various reasons why the time to bring a defendant to trial may be tolled, including: (1) a defendant's request for a continuance; (2) resolution of motions made by the defendant, and (3) "the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 14} The "burden" of bringing a defendant to trial within the speedy trial period lies with the State. *State v. Singer*, 50 Ohio St.2d 103, 106 (1977), *State v. Ramey*, 2012-Ohio-2904, ¶ 14. However, under R.C. 2945.73, a defendant must file a motion to dismiss at or before the beginning of trial to assert the right to a speedy trial has been violated. We note that an amended version of R.C. 2945.73 became effective on April 4, 2023 and requires the State to bring a defendant to trial within 14 days from the time a defendant files a motion to dismiss on speedy trial grounds whereas the prior version of the statute required immediate dismissal if, upon filing the motion, it was determined that the defendant's speedy trial time had run. While the parties devote some of their argument to whether the amended or prior version of the statute applies to this case, we conclude that we need not reach this issue due to our analysis below.

{¶ 15} Importantly, the right to a speedy trial is not "self-executing," and an

---

2. Cummings limits his speedy trial argument to violations of Ohio statutes. We will accordingly only address the same.

"[a]ffirmative action on the part of an accused in the nature of a demand to be tried is necessary . . . In other words, there can be no denial where there has been no demand." *Partsch v. Haskins*, 175 Ohio St. 139, 140 (1963). *See also State v. Hamilton*, 2002 WL 205489 (12th Dist. Feb. 11, 2002); *State v. Roy*, 2010-Ohio-5528 (12th Dist.).

{¶ 16} Once a demand has been made, a defendant makes a prima facie case that he has been denied a speedy trial by showing the calendar days since his arrest exceed the statutory time limit to be tried. *See State v. Butcher*, 27 Ohio St.3d 28, 30-31 (1986). At that point, the State may produce evidence demonstrating the deadline to bring the defendant to trial was tolled or extended by various pretrial events. *Id*. Ultimately, it is a motion from a defendant that "affords the trial court the opportunity to determine . . . [the existence of undue delay] to ensure that the defendant's speedy-trial rights are protected." *State v. Belville*, 2022-Ohio-3879, ¶ 22.[3]

{¶ 17} In cases where a motion to dismiss was not made at the trial level, a defendant must demonstrate "a reasonable probability that a motion to dismiss on speedy trial grounds would have been successful." *State v. Roy*, 12th Dist. Butler No. CA2009-12-305, 2010-Ohio-5528, ¶ 22; *S. Euclid v. Schutt*, 2020-Ohio-3661, ¶ 13 (8th Dist.) ("[I]n order to demonstrate that counsel provided ineffective assistance of counsel by failing to file a motion to dismiss for speedy trial violations, the defendant must show that the motion would have been successful and the case would likely have been dismissed"). However, appellate courts are strictly limited to the record available to the trial court. *Id*. at ¶ 9, Ohio App. R. 9.

{¶ 18} Whether or not a motion to dismiss was filed, the "imperfect handling of

---

3. In *Belville*, the Ohio Supreme Court examined whether the State responded to the defendant's discovery requests in a timely fashion, but its analysis enforces the idea that defendants must actively assert, often via motions, that the State's action or inaction endangers or violates the right to a speedy trial.

continuances" by a trial court can often complicate the determination of whether a defendant's speedy trial rights were violated. *Ramey*, 2012-Ohio-2904 at ¶ 33. When a trial court orders the continuance of a jury trial sua sponte, the reason for the continuance must be stated in the order so that, if necessary, it can be determined whether the continuance was reasonable and if it should toll a defendant's speedy trial time. *Id.* at ¶ 32-33. "[S]cheduling conflicts, crowded dockets, or the lack of an available courtroom, are reasonable bases necessitating a [sua sponte] continuance . . . ." *State v. Redelman*, 2013-Ohio-657, ¶ 24 (12th Dist.) (finding a 39-day continuance due to a crowded docket and the defense's need for further trial preparation was reasonable). *See also State v. Agostini*, 2017-Ohio-4042, ¶ 68-74 (trial court entered multiple continuances due to defendant's repeated dishonesty about whether he had hired private counsel as well as his disputes with multiple appointed attorneys regarding trial scheduling and preparation).

{¶ 19} Nonetheless, "appellate court[s] may affirm a conviction challenged on speedy-trial grounds even if the trial court did not expressly enumerate any reasons justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record." *Ramey* at ¶ 33. When, after reviewing the record, it is "not clear who requested [a] continuance or the reason behind it" a delay must be charged to the State. *State v. Myers*, 2002-Ohio-6658, ¶ 58. In *Myers*, the defendant filed several motions to dismiss on speedy trial grounds as his trial was continued repeatedly over the course of several years. *Id.* The defendant in *Ramey* filed a speedy trial motion as well. *Ramey* at ¶ 7.

{¶ 20} Here, Cummings states that his trial occurred 287 days after his arrest and 17 days past the speedy trial deadline. Cummings acknowledges there were multiple events outside of the June 8 and August 14 continuances that tolled his speedy trial time. The State does not contest Cummings' calculation outside of arguing the continuances

were tolling events. Therefore, had Cummings' trial counsel motioned to dismiss on these grounds, a prima facie case as to a speedy trial violation presumably could have been made because the trial occurred over 270 days after Cummings' arrest without considering tolling events.

**{¶ 21}** Turning to the continuances, while the trial court and counsel discussed both continuances by phone and neither party objected, nothing in the record shows the circumstances that required a continuance. Had the trial court stated in its entries the reason for the continuances, the issue of whether or not they tolled the speedy trial time may have been easily resolved.

**{¶ 22}** Cummings is correct that time is typically charged against the State when it is not clear who requested a continuance. However, because no speedy trial motion was filed, the State did not have the opportunity to demonstrate why 17 or more days were tolled by the June 8 and August 14 continuances, bringing Cummings' trial date within the statutory deadline. *See e.g. State v. Mathews*, 2020-Ohio-5249, ¶ 23-24 (10th Dist.) (defendant's speedy trial time was tolled where, at a hearing on his motion to dismiss, it was determined the court was not immediately available to reschedule a trial date due to being on vacation despite that not being stated in a subsequent entry); *State v. Baugh*, 2018-Ohio-857, ¶ 40, 78 (5th Dist.) (testimony of the "court scheduler" at a hearing on a motion to dismiss established defense counsel acquiesced to a continuance after the court's docket could not accommodate an earlier trial date).[4]

---

4. The Eighth District previously considered a case with similar, but distinguishable, facts to the one at bar. *See generally S. Euclid v. Schutt*, 2020-Ohio-3661 (8th Dist.). There, the Eighth District concluded that a single sua sponte continuance of six months with no justification in the record counted against the State even though the defendant did not file a motion to dismiss on speedy trial grounds and no hearing was held. *Id.* at ¶ 30-31. The court noted that the continuance, "standing alone, was more than double the applicable speedy trial period" and gave the Eighth District no reason to conclude the continuance could be deemed reasonable. *Id.* The *two* continuances granted in this case were significantly shorter in duration, making the State's lack of opportunity to address them more noteworthy because Cummings' trial date ultimately occurred 17 days after the deadline calculated by Cummings on appeal.

{¶ 23} Based on the record before us, it is not possible to determine with a reasonable probability that a motion to dismiss on speedy trial grounds would have been successful if filed. In fact, it appears highly doubtful. Due to the fact Cummings never asserted his right to a speedy trial at the trial level, the State was not provided an opportunity to demonstrate whether Cummings was in fact given a speedy trial. We therefore cannot conclude whether the conduct of Cummings' counsel was deficient or prejudicial.

{¶ 24} Cummings' assignment of error as to this issue is overruled.

{¶ 25} SECOND ISSUE: DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN ATTORNEY SCRANTON FAILED TO PRESENT A MERITIORIOUS DEFENSE TO THE CHARGE OF ASSAULT.

{¶ 26} Next, Cummings argues that he was denied effective counsel at the trial level because his counsel did not present any defense to the allegation that Cummings "attempted" to cause harm to Deputy Ennis. Instead, the trial strategy focused exclusively on whether Cummings' foot touched Deputy Ennis' face. Cummings argues that his kick at Deputy Ennis "could reasonably be argued to [be] . . . an involuntary response or a 'knee jerk'" in response to officers forcefully attempting to secure him in the restraint chair. This defense, he asserts, could reasonably have led the jury to find no intent behind the kicks.

{¶ 27} Again, courts strongly presume that an attorney's conduct at trial was reasonable. *Strickland*, 466 U.S. at 669. In addition, "the fact that [a] trial strategy was ultimately unsuccessful or that there was another possible and better strategy available does not amount to ineffective assistance of counsel." *State v. Murphy*, 2009-Ohio-6745, ¶ 43 (12th Dist.). Stated differently, "[d]ecisions about 'the viability of certain defenses'

are 'within the exclusive province of defense counsel to make after consultation with his client.'" *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001).

**{¶ 28}** Assault is defined as "knowingly caus[ing] or attempt[ing] to cause physical harm to another . . . ." R.C. 2903.13(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶ 29}** Here, we conclude Cummings' argument does not satisfy either prong of *Strickland.* Upon review of the video footage and evidence presented at trial, it is difficult to determine if Cummings' kicks contacted Deputy Ennis' face. As a result, it makes sense that Cummings' trial counsel would argue no contact was made, suggesting to the jury there was no intent to kick at all. What the security and body camera videos do make clear, however, is that Cummings' kicks were deliberate and not "knee jerk" reactions to being forcefully restrained.

**{¶ 30}** As a whole, the evidence shows Cummings was intoxicated, cursed, and made racial, derogatory remarks toward Deputy Ennis. Upon arriving at the jail, it took four deputies to get Cummings into a restraining chair because he was being non-compliant and combative. When presented with the opportunity to harm Deputy Ennis as he reached down to secure Cummings' legs, Cummings clearly took the chance to kick at Ennis, repeatedly. Thus, not only do we conclude that the performance of Cummings' trial counsel was reasonable, but the overwhelming evidence of Cummings' guilt also makes it clear that the outcome of the trial could not have been different.

**{¶ 31}** Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.