[Cite as *State v. Barrow*, 2026-Ohio-1236.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-06-047 |
| vs. | : | OPINION AND<br>JUDGMENT ENTRY<br>4/6/2026 |
| GEOFFERY BARROW, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24CR42045

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.

# **O P I N I O N**

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Geoffery Barrow, appeals from his conviction in the Warren County Court of Common Pleas for theft. For the reasons set forth below, we affirm his conviction.

## I. PROCEDURAL HISTORY

{¶ 2} On August 2, 2024, following a series of thefts at a Nike Outlet store in Monroe, Warren County, Ohio, Barrow was arrested. The thefts occurred on four different dates—June 29, 2024, July 4, 2024, July 9, 2024, and July 24, 2024—and involved merchandise totaling $2,334.44.

{¶ 3} Barrow was originally charged in the Lebanon Municipal Court with four separate theft offenses. However, on September 26, 2024, the case was bound over to the Warren County Common Pleas Court. On October 14, 2024, Barrow was indicted on one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree as the aggregate value of the stolen items was $1,000 or more but less than $7,500. A pretrial hearing was held on October 22, 2024. At this time, Barrow's attorney executed a speedy-trial time waiver. A few days later, on October 30, 2024, Barrow's attorney moved to withdraw. On October 31, 2024, Barrow withdrew his speedy-trial time waiver. The trial court granted counsel's motion to withdraw, appointed new counsel for Barrow, ordered that Barrow be released from jail, and set a final pretrial hearing for November 7, 2024.

{¶ 4} Barrow failed to appear on November 7, 2024, and the trial court revoked his bond and issued a capias for his arrest. Barrow was not apprehended by Warren County until December 2, 2024. He appeared before the trial court for a pretrial hearing on December 5, 2024.[1] The trial court scheduled a jury trial for December 19, 2024, and released Barrow on his own recognizance. On December 13, 2024, the trial court set forth an Entry and Order Extending Speedy Trial Time. In the entry, the court noted that the statutory speedy trial time was set to run on December 16, 2024. The court's entry found

---

1. At the December 5, 2024 pretrial hearing, the trial court indicated that Barrow had been arrested in Hamilton County on November 6, 2024. He was released directly to Warren County from the Hamilton County Jail on December 2, 2024.

good cause to extend both statutory and constitutional speedy trial limitations until December 19, 2024, "[d]ue to Defendant's request to withdraw his time waiver, his request for new counsel, his failure to appear for the pretrial on November 7, 2024, and the Court's calendar."

{¶ 5} On December 17, 2024, the trial court found that Barrow had violated the terms and conditions of his bond by failing to comply with pretrial services. The court revoked Barrow's bond and issued a capias for his arrest. Barrow subsequently failed to appear for trial on December 19, 2024. On January 22, 2025, the trial court issued an order reflecting that Barrow was unavailable for trial.

{¶ 6} On April 30, 2025, Barrow was arrested on the December 17, 2024 capias. He remained jailed while awaiting trial.

## II. JURY TRIAL & SENTENCING

{¶ 7} A jury trial commenced on June 2, 2025. The State presented testimony from two witnesses: Jason Moeller, a Nike employee who managed the sales force and worked in loss prevention at the outlet store in Monroe, and Detective TJ Allen, a detective with the city of Monroe Police Department who was assigned to investigate the thefts from the Nike store. In addition to Moeller's and Detective Allen's testimony, the State also introduced into evidence video security footage of the four thefts, itemized receipts detailing the items stolen, photographs of Barrow's vehicle and items found in the vehicle, and a recording of Barrow's interview with Detective Allen following his arrest. Barrow took the stand in his own defense. From the testimony and evidence presented, the following facts were established.

{¶ 8} On four separate dates, June 29, 2024, July 4, 2024, July 9, 2024, and July 24, 2024, Barrow stole merchandise from the Nike store at the outlet mall in Monroe. On June 29, 2024, Barrow entered the Nike store with a Columbia bag. He proceeded to grab

several pairs of basketball shorts and, while attempting to hide himself behind mannequins and racks of clothing, stuffed the shorts into his Columbia bag. Barrow walked out of the store without paying for the basketball shorts. In total, Barrow stole 21 pairs of basketball shorts on June 29, 2024, totaling $734.80. The theft was captured on the store's security cameras.

{¶ 9} On July 4, 2024, Barrow entered the Nike store with another individual, whom he worked with to steal more basketball shorts. Barrow's accomplice held a Columbia bag and acted though he was shopping as Barrow went rack to rack, collecting several pairs of shorts. Barrow then took the shorts to his accomplice, where Barrow and the accomplice shoved the shorts into the Columbia bag. Barrow and his accomplice left the store without paying for the shorts. In total, 41 pairs of shorts totaling $774.79 were stolen on July 4, 2024. Security cameras from the store captured Barrow and his accomplice's actions that day.

{¶ 10} On July 9, 2024, Barrow entered the Nike store with a black Under Armour bag. He set the bag down behind some mannequins and proceeded to grab several pairs of sweatpants off a rack. After stuffing the pants into the black bag, Barrow went and collected additional pairs of sweatpants, which he again stuffed into the black bag. He then walked out of the store without paying. Barrow stole five pairs of sweatpants on July 9, 2024, totaling $299.95. The store's security cameras captured the theft.

{¶ 11} Finally, on July 24, 2024, Barrow entered the Nike store with a Columbia bag. While another individual distracted a store employee, Barrow took multiple pairs of basketball shorts off the rack and stuffed them into the Columbia bag. He then exited the Nike store without paying for the items. Barrow stole ten pairs of basketball shorts on July 24, 2024, totaling $524.90. This theft was also captured on the store's security cameras.

{¶ 12} Moeller, who had worked for Nike for nine years, testified he was familiar

with Nike's process in detecting theft and determining the value of items stolen. He explained that Nike has a "real-time inventory system" which informs the store of exactly how many items the store has in stock of each product. When an item is sold at the store, the inventory system updates in "real time" to reflect that sale. On each of the four dates Barrow stole from the Nike store, security footage was watched to determine what items had been taken. Nike employees confirmed that the items were not dropped elsewhere in the store by watching the video and by physically walking the sales floor. The sales floor and stock room were checked to ensure that the items had not been placed back on racks or moved to another location inside the store. After determining that the items were not misplaced, Nike employees compared the number of items left on the rack to the number of items recorded in the real-time inventory system as being currently in stock. By doing this, Nike was able to determine the number and type of items Barrow stole. Nike employees then rang up those items on the cash register to calculate the amount of the loss. The itemized receipts reflected the accurate price for each item taken. Moeller testified that Barrow stole $2,334.44 worth of merchandise over four days: $734.80 on June 29, 2024, $774.79 on July 4, 2024, $299.95 on July 9, 2024, and $524.90 on July 24, 2024. According to Moeller, the items stolen were not on a sales promotion when they were taken.

{¶ 13} Nike reported the thefts to the Monroe Police Department and provided the police with security footage of the thefts. Utilizing the security footage and the Southwest Ohio Police ("SWOP") Intel database and the Ohio Law Enforcement Gateway ("OHLEG") database, Detective Allen generated a lead as to the suspect's identity and the motor vehicle he used. By comparing Barrow's BMV photograph to the store security footage, Detective Allen was able to verify Barrow's identity and learn that Barrow drove a black GMC Yukon. The license plate number for the Yukon was uploaded into the

FLOCK Safety System, which allowed registered roadway cameras to read vehicle license plates and send alerts to law enforcement.

{¶ 14} On August 2, 2024, the FLOCK system identified the Yukon driving eastbound on State Route 63 at I-75 in Monroe, towards the outlet mall. The FLOCK system alerted Detective Allen to the vehicle's location and direction of travel. Detective Allen and another officer went to the outlet mall where they found Barrow's vehicle parked. The officers saw Barrow walking between two parking aisleways and stopped him. Barrow was placed in handcuffs and read his *Miranda* rights, which Barrow understood and waived.

{¶ 15} A canine unit was called to the scene to do an open-air sniff on the Yukon and the canine alerted to the odor of drugs in the vehicle. A search of the vehicle yielded a small bag of marijuana, empty bags from various retailers, including a Columbia bag, other bags from retailers containing a single shirt, a pair of wire snips, a magnet, and a bag of sensors. In Detective Allen's experience, magnets are typically used in thefts to remove security sensors from stolen merchandise. If the magnet is not successful in removing the sensor, then wire snips are used to cut off the sensor.

{¶ 16} Barrow was transported to the Monroe Police Department, where he was interviewed. During the interview, Barrow admitted to stealing from Nike. He stated that there was "nothing to investigate" as "I stole the shit." He informed Detective Allen that the items he stole from Nike he later sold for half price on the street in Cincinnati.

{¶ 17} At trial, Barrow took the stand and admitted to stealing merchandise from Nike. He further admitted it was him on the store's security footage. However, Barrow denied that the value of the merchandise he stole was $2,334.44. He claimed that everything he took was marked down to half off the ticketed price. He further claimed that he took fewer items than Nike claimed he took. He valued the items that he stole as being

"under $1,000."

{¶ 18} After considering the testimony and evidence admitted at trial, the jury found Barrow guilty of theft and found that the value of the property stolen was $1,000 or more but less than $7,500. Barrow was sentenced to 12 months in prison and ordered to pay $2,334.44 in restitution to Nike.

{¶ 19} Barrow appealed his conviction, raising three assignments of error for review.

### III. ANALYSIS

### A. Speedy Trial

{¶ 20} Assignment of Error No. 1:

{¶ 21} BARROW'S SPEEDY TRIAL RIGHTS WERE VIOLATED.

{¶ 22} In his first assignment of error, Barrow argues his speedy trial rights were violated by the State's failure to bring him to trial within the time frame set forth in R.C. 2945.71(C)(2). He contends that he never knowingly, intelligently, or voluntarily waived his right to a speedy trial and that defense counsel's waiver of his rights was invalid. Finally, he argues that his due process rights were violated by the two-and-one-half month delay in indicting him for the theft offense following his arrest. For the reasons discussed below, we find his arguments to be without merit.

### 1. Statutory Speedy-Trial Rights

{¶ 23} "The Sixth Amendment to the United States Constitution as well as Article 1, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial." *State v. Morren*, 2024-Ohio-4528, ¶ 18 (12th Dist.). *See also State v. Taylor*, 2002-Ohio-7017, ¶ 32. Ohio's speedy trial statutes, R.C. 2945.71, et seq., were enacted to preserve this right. *State v. Miller*, 2009-Ohio-4831, ¶ 8 (12th Dist.)

{¶ 24} However, "the right to a speedy trial is not 'self-executing,' and an

'[a]ffirmative action on the part of the accused in the nature of a demand to be tried is necessary.'" *State v. Cummings*, 2024-Ohio-3356, ¶ 15 (12th Dist.), quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140 (1963). R.C. 2945.73(C)(2) provides that

> [u]pon motion made at or before the commencement of trial, but not sooner than fourteen days before the day the person would become eligible for release pursuant to division (C)(1) of this section, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days *after the motion is filed and served on the prosecuting attorney.* If no motion is filed, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired. . . . The fourteen-day period specified under this division may be extended at the request of the accused or on account of the fault or misconduct of the accused.

(Emphasis added.) Thus, an accused is entitled to dismissal of the charges with prejudice if he is not brought to trial within 14 days of either (1) the accused's motion for dismissal on speedy trial grounds; or (2) the trial court's determination that the accused has not been brought to trial within the time provided by R.C. 2945.71 and 2945.72.

{¶ 25} Where speedy trial rights have not been "'timely asserted by motion prior to the commencement of trial, speedy trial rights are waived.'" *State v. Agostini*, 2017-Ohio-4042, ¶ 57 (12th Dist.), quoting *State v. Miller*, 1999 WL 1057218, *6 (12th Dist. Nov. 22, 1999). *See also State v. Cassidy*, 1985 WL 3971, *1 (12th Dist. Dec. 2, 1985); *State v. Mitchell*, 2011-Ohio-3818, ¶ 21 (10th Dist.); *State v. Sergent*, 2019-Ohio-4717, ¶ 13-14 (3d Dist.). An appellant cannot thereafter "raise a speedy trial issue for the first time on appeal." *Agostini* at ¶ 58. *See also Sergent* at ¶ 14; *State v. Taylor*, 2002-Ohio-7017, at ¶ 37 ("appellant's failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73[C] prevents him from raising the issue on appeal").

{¶ 26} In the present case, neither of the circumstances described in R.C.

2945.73(C)(2) occurred. Barrow did not file a motion to dismiss on speedy trial grounds, and the trial court never entered a determination that Barrow had not been brought to trial within the statutory time frame. Barrow therefore forfeited his right to bring a speedy trial argument on appeal.[2] *Agostini* at ¶ 58.

{¶ 27} Even if this court were to consider Barrow's speedy trial argument, the argument fails. Pursuant to R.C. 2945.71(C)(2), an individual charged with a felony "shall be brought to trial within two hundred and seventy days after the person's arrest." "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). The time in which an accused may be brought to trial can be extended by the events enumerated in R.C. 2945.72(A) through (J). These events include "[a]ny period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against the accused," "[a]ny period of delay occasioned by the neglect or improper act of the accused," and "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(A), (D), and (H).

{¶ 28} Barrow was arrested on August 2, 2024 and held in jail. Thus, taking into account the triple-count provision of R.C. 2945.71(E), the 90-day speedy-trial deadline

---

2. In his reply brief, Barrow argues defense counsel provided ineffective representation by failing to file a motion to dismiss on speedy trial grounds. Barrow did not raise this argument in his initial appellate brief. "It is well-established that '[a] reply brief is not to be used by an appellant to raise new assignments of error or issues for consideration; it is merely an opportunity to reply to the appellee's brief.'" *State v. Jewell*, 2022-Ohio-2727, ¶ 24, fn. 3 (12th Dist.), quoting *State v. Singh*, 2001 WL 322714, *3, fn. 1 (12th Dist. Apr. 2, 2001). As Barrow did not raise an ineffective assistance of counsel argument in his initial brief, the issue is not properly before us and will not be considered. *See id.; State v. Rose*, 2022-Ohio-2454, ¶ 15, fn. 2 (12th Dist.).

was set to expire on October 31, 2024.[3] However, Barrow's counsel waived speedy-trial time on October 22, 2024. At the time of the waiver, 243 days (81 days in jail multiplied by three) of the allotted 270 days had expired. On October 31, 2024, Barrow withdrew his time waiver and was released from jail on bond, leaving the State 27 days, or until November 27, 2024, to bring him to trial. The trial court scheduled a final pretrial hearing for November 7, 2024, but Barrow failed to appear at the hearing. A capias was issued for Barrow's arrest. He was not apprehended by Warren County until December 2, 2024. He remained jailed until December 5, 2024, when he appeared before the court for a pretrial hearing before being released on bond.

{¶ 29} We find, in accordance with the Ohio Supreme Court's holding in *State v Bauer*, 61 Ohio St.2d 83 (1980), that Barrow's failure to appear for the November 7, 2024 final pretrial hearing reset the speedy trial clock. In *Bauer*, the Supreme Court held that "a defendant who fails to appear at a scheduled trial, and whose trial must therefore be rescheduled for a later date, waives his right to assert the provisions of R.C. 2945.71 through 2945.73 for that period of time which elapses from his initial arrest to the date he is subsequently rearrested." *Id.* at 85. The Court reasoned as follows:

> It is clear that [defendant] was afforded his statutory right to a speedy trial initially, but through his own design he chose to shun this right and impede the prompt administration of this cause. [Defendant] will not be permitted to enjoy the protection of these statutes, as to a time period prior to his failure to appear, when by his actions he has waived their benefits. . . .
>
> [Defendant] argues that his failure to appear for trial should, minimally, "extend" the period of time within which he should be brought to trial, pursuant to R.C. 2945.72(D). Under this construction, [defendant] would have the statute tolled from

---

3. The day of a defendant's arrest does not count in the speedy-trial calculation. *See State v. Morren*, 2024-Ohio-4528, ¶ 18 (12th Dist.); Ohio Crim.R. 45(A) ("In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included").

his initial trial date of May 5, 1977, until his recapture on June 5, 1977. We find this solution unworkable and inconsistent with the efficient administration of justice. *There is no justification for a rule which could require a court to reschedule, within a few days after his rearrest, the trial of a defendant who has forfeited his appearance bond. Such a holding would not comport with the realities of congested court dockets which are typically set months in advance.*

(Emphasis added.) *Id.* at 84-85.

{¶ 30} In *State v. Stokes*, 2011-Ohio-2104 (12th Dist.), this court applied the principle set forth in *Bauer* to reverse the dismissal of an indictment on speedy trial grounds in a case where the defendant failed to appear for an arraignment after authorities were unable to locate him at the address he had provided to the court and his whereabouts were unknown. We held that the period between the defendant's initial appearance and his eventual arrest should be excluded in calculating speedy trial time. *Id.* at ¶ 19. In doing so, we observed that "'[w]e should not allow [defendants] to use their slipperiness to claim the protection' of speedy trial time limitations." *Id.* at ¶ 18, quoting *State v. Gums*, 2006-Ohio-3159, ¶ 22 (8th Dist.).

{¶ 31} In *State v. Menz*, 1994 WL 714509 (12th Dist. Dec. 27, 1994), this court applied the holding in *Bauer* where a defendant first failed to appear for a plea hearing and then subsequently failed to appear for a trial. *Menz* at *4. We held that the defendant was not entitled to speedy trial time from the date of his initial arrest until he was rearrested for failing to appear. *Id.*

{¶ 32} Other appellate districts have likewise applied *Bauer* to situations where the defendant fails to appear at other scheduled court appearances, such as scheduling conferences, change of plea hearings, and arraignments. *See State v. Fultz*, 2007-Ohio-3619, ¶ 11 (4th Dist.); *State v. Gibson*, 75 Ohio App.3d 388 (3d Dist. 1992); *State v. Russell*, 1998 WL 357546 (4th Dist. June 30, 1998); *State v. Lockett*, 1988 WL 18639 (8th

Dist. Feb. 18, 1988). Recently, in *State v. Boyd*, 2024-Ohio-1517, ¶ 25 (4th Dist.), the Fourth District applied *Bauer* in a situation where the defendant—like Barrow—failed to appear for a final pretrial hearing. Applying *Bauer* and the line of caselaw that has developed therefrom, we find that Barrow's failure to appear at the November 7, 2024 final pretrial hearing waived his right to assert the provisions of R.C. 2945.71 through 2945.73 from the date of his initial arrest, August 2, 2004, to the date he was rearrested, December 2, 2024.

{¶ 33} Barrow's speedy trial time was reset a second time when he failed to appear for trial on December 19, 2024, after being released on bond on December 5, 2024. Barrow again absconded and was not arrested until April 30, 2025. As Barrow was held in jail following his arrest on April 30, 2025, he was required to be tried by July 29, 2025. His trial commenced on June 2, 2025, well within the timeframe required by R.C. 2945.71. Barrow's argument that his right to a speedy trial was violated is, therefore, without merit.

### 2. Counsel's Waiver of Speedy Trial

{¶ 34} Barrow argues that he never knowingly, intelligently, or voluntarily waived his speedy trial rights and that defense counsel did not have his consent to enter a speedy trial waiver on October 22, 2024. He claims that the speedy-trial time clock should not have been paused on October 22, 2024. Without that pause, since he had been jailed from the date of his original arrest, August 2, 2024, Barrow argues he was required to be tried by October 31, 2024. As no trial was held by that date, Barrow contends the indictment should have been dismissed.

{¶ 35} We note that Barrow did not raise this argument in a motion to dismiss before the trial court. He therefore cannot raise this argument for the first time on appeal. *Agostini*, 2017-Ohio-4042, at ¶ 58 (12th Dist.). Nonetheless, even if we consider the merits of Barrow's argument, the argument fails as "it is well-established that '[a]

- 12 -

defendant is bound by his counsel's waiver of speedy trial rights, even though the waiver might have been executed without his consent.'" *State v. Watkins*, 2021-Ohio-163, ¶ 31 (12th Dist.), quoting *State v. Taylor*, 2002-Ohio-7017, ¶ 33; *State v. Chisenhall*, 2024-Ohio-1918, ¶ 15 (12th Dist.). Furthermore, "'a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even over the defendant's objections.'" *State v. Rodandello*, 2022-Ohio-2460, ¶ 23 (12th Dist.), quoting *State v. Glass*, 2011-Ohio-6287, ¶ 17 (10th Dist.). Counsel had the ability to waive Barrow's speedy trial rights, which tolled the speedy-trial clock.

### 3. Preindictment Delay

{¶ 36} In his final argument, Barrow maintains that his due process rights were violated by the State's delay in waiting to indict him for two-and-one-half months after his arrest. Barrow contends that the delay between his arrest on August 2, 2024 and the grand jury's indictment on October 14, 2024 prejudiced his defense, preparation for trial, and ability to assist in his defense.

{¶ 37} Barrow neither raised the issue of preindictment delay nor asserted a violation of his due process rights in the trial court. Accordingly, as Barrow raises the issue of preindictment delay for the first time on appeal, he has forfeited all arguments with respect to this issue except for a claim of plain error. *State v. Greathouse*, 2017-Ohio-6870, ¶ 9 (9th Dist.); *State v. Wilson*, 2016-Ohio-2718, ¶ 61 (8th Dist.). "Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings." *State v. Jones*, 2026-Ohio-68, ¶ 67 (12th Dist.). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Myers*, 2020-Ohio-59, ¶ 27 (12th Dist.) "Notice of plain error is taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Jones*

- 13 -

at ¶ 67.

{¶ 38} The Ohio Supreme Court has recognized that "'[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law' under the United States and Ohio Constitutions." *State v. Jones*, 2016-Ohio-5105, ¶ 12, quoting *State v. Luck*, 15 Ohio St.3d 150 (1984), paragraph two of the syllabus. "[T]he due process protections afforded in pre-indictment delay cases are protections against the prejudice that a defendant will suffer *at trial*." (Emphasis sic.) *Luck* at 154, citing *United States v. Marion*, 404 U.S. 307, 326 (1971).

{¶ 39} "[P]roof of actual prejudice, alone, will not automatically validate a due process claim, and the prejudice suffered by the defendant must be viewed in light of the [S]tate's reason for the delay." *Luck* at 154, citing *United States v. Lovasco*, 431 U.S. 783, 789-790 (1977). To that end, the Supreme Court has established a burden-shifting framework for analyzing due-process claims based on preindictment delay. *Jones*, 2016-Ohio-5105, at ¶ 13. First, the defendant must present evidence that the preindictment delay caused actual prejudice. *Id.; State v. Bourn*, 2022-Ohio-4321, ¶ 11. "After the defendant has provided evidence of actual prejudice, the burden shifts to the [S]tate to produce evidence of a justifiable reason for the delay." *Id.*, citing *Jones* at ¶ 13.

{¶ 40} "[T]he actual-prejudice determination is inherently dependent on the particular facts of each case." *Id.* at ¶ 12. That is to say that "[a] determination of actual prejudice involves 'a delicate judgment' and a case-by-case consideration of the particular circumstances." *Jones* at ¶ 20, quoting *State v. Walls*, 2002-Ohio-5059, ¶ 52. *See also Marion*, 404 U.S. at 325. "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the [S]tate's evidence and bolster the defense." *Jones* at ¶ 28.

"The prejudice advanced must be more than merely speculation." *State v. August*, 2019-Ohio-4126, ¶ 12 (12th Dist.). *See also State v. Heath*, 1997 WL 44374, *2 (12th Dist. Feb. 3, 1997) ("[p]roof of actual prejudice must be specific, particularized and non-speculative").

{¶ 41} In the present case, Barrow summarily argues that his incarceration during the two-and-one-half month delay between his arrest and issuance of the indictment "prejudiced [his] defense, preparation for trial, and ability to assist in his defense." He fails, however, to identify any missing evidence or unavailable testimony relevant to his defense that was no longer available to present at trial due to the preindictment delay. Barrow has therefore not satisfied his burden of demonstrating "actual prejudice," and his argument that his due process rights were violated by preindictment delay is without merit.

{¶ 42} Accordingly, having found no merit to any of the arguments set forth in Barrow's first assignment of error, the assignment of error is hereby overruled.

**B. Sufficiency of the Evidence**

{¶ 43} Assignment of Error No. 2:

{¶ 44} BARROW'S CONVICTION WAS NOT BASED UPON SUFFICIENT EVIDENCE.

{¶ 45} In his second assignment of error, Barrow challenges whether the State presented sufficient evidence establishing that the value of the items he stole from Nike was $1,000 or more, such that the offense rose to a fifth-degree felony rather than a first-degree misdemeanor offense. He contends that Nike's inventory system was not perfect and "there is no way to tell what [he] may have taken."

{¶ 46} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 1997-Ohio-52, ¶ 23; *State v. Grinstead*, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence

underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 47} Barrow was convicted of theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent." If the property or services stolen is $1,000 or more but less than $7,500, the offense is a felony of the fifth degree. R.C. 2913.02(B)(2).

{¶ 48} Barrow admitted to committing the thefts during his police interview and in his trial testimony. He maintains, however, that the State failed to prove that the value of the items he stole equaled or exceeded $1,000. However, when viewing Moeller's testimony, the security footage, and the receipts detailing the value of the items stolen in a light most favorable to the prosecution, we find that any rational trier of fact could have found the value of the merchandise taken from Nike exceeded $1,000. Moeller's testimony established that Nike had a "real-time inventory system" that tracked the amount of merchandise the store had on hand at any given point in time. Utilizing the store's security footage and examining the sales floor and stock room after Barrow's visits to the store, Nike employees were able to determine that items missing had not been misplaced but rather had been stolen by Barrow. Nike employees rang up the stolen items on the cash register to calculate the amount of the loss, and the receipts were printed.

This was done on each of the four days Barrow stole from Nike. The value of the items reflected on the receipts was the value that the items were being sold for in the store. According to Moeller, the items were not on a sales promotion when Barrow stole them. Moeller testified that the aggregate value of the stolen items was $2,334.44, which reflected Barrow's theft of 21 pairs of basketball shorts totaling $734.80 on June 29, 2024; 41 pairs of shorts totaling $774.79 on July 4, 2024; five pairs of sweatpants totaling $299.95 on July 9, 2024; and ten pairs of basketball shorts totaling $524.90 on July 24, 2024. Contrary to Barrow's arguments, the State presented sufficient evidence to establish the type and quantity of items stolen by Barrow as well as the aggregate price of such items. Barrow's second assignment of error is, therefore, overruled.

## C. Admission of Evidence

{¶ 49} Assignment of Error No. 3:

{¶ 50} BARROW DID NOT RECEIVE A FAIR TRIAL BECAUSE THE STATE WAS PERMITTED TO PRESENT INADMISSIBLE AND PREJUDICIAL EVID.R. 404(B) EVIDENCE.

{¶ 51} In his third assignment of error, Barrow challenges the trial court's decision to admit certain testimony and evidence at trial, claiming that the admission of such evidence denied him of his right to a fair trial. Barrow complains about the admission of three pieces of evidence: (1) evidence that he had been convicted of robbery in 1985; (2) Detective Allen's testimony regarding his use of law enforcement databases (SWOP Intel and OHLEG) to learn that Barrow was involved in "previous incidents" involving a black GMC Yuckon; and (3) Detective Allen's testimony that "drugs and thefts go together" and that marijuana was found inside Barrow's Yukon. Barrow argues that such evidence constituted "prejudicial prior bad acts" evidence under Evid.R. 404(B) that should have been excluded.

{¶ 52} Generally, the admission or exclusion of evidence rests within the trial court's discretion, and such decisions will not be reversed absent an abuse of discretion. *State v. Jennings*, 2024-Ohio-383, ¶ 12 (12th Dist.). However, when no objection to the evidence was raised, appellate review is limited to plain error. *State v. Griffin*, 2025-Ohio-1403, ¶ 11 (12th Dist.), citing *State v. Kinsworthy*, 2014-Ohio-1584, ¶ 16 (12th Dist.). "An alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different." *Kinsworthy* at ¶ 16. Conversely, an error is harmless if there is "overwhelming evidence of guilt" or "some other indicia that the error did not contribute to the conviction." *State v. Sims*, 2009-Ohio-550, ¶ 34 (12th Dist.).

**1. 1985 Robbery Conviction**

{¶ 53} Barrow claims the trial court erred in allowing evidence to be introduced that he had been convicted of robbery in 1985. However, the record reveals that when the State cross-examined Barrow about his criminal history, defense counsel objected to evidence of the 1985 conviction being entered into evidence and the trial court sustained the objection.

> [PROSECUTOR]: You were convicted of a robbery in 1985, right?
>
> [DEFENSE COUNSEL]: Objection.
>
> [BARROW]: That was a theft and I tried to get away and the person got hurt.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Hang on, hang on. What's your objection?
>
> [DEFENSE COUNSEL]: The time frame, it was over ten years. Was it '85, I believe?
>
> [PROSECUTOR]: '85, that's correct.

THE COURT. Sustained.

{¶ 54} Thereafter, in its instructions to the jury, the trial court advised that "evidence does not include any statements that were stricken by the Court, or that you were instructed to disregard. You must not speculate why an objection was sustained to any question or what the answer to that question might have been." A jury is presumed to follow and comply with instructions given to it by the trial court. *State v. Griffin*, 2025-Ohio-1403, ¶ 18 (12th Dist.). As defense counsel's objection was sustained and the evidence was excluded by the trial court, there is no merit to Barrow's argument that he was prejudiced by its admission.

### 2. Law Enforcement Databases Revealing "Previous Incidents" in the Yukon

{¶ 55} Barrow argues the trial court erred when it permitted Detective Allen to testify on direct examination that he utilized law enforcement databases, including SWOP Intel and OHLEG, to develop a lead as to Barrow's identity and, through those databases, learned there were "previous incidents with [Barrow] in a GMC Yukon, black in color." Barrow argues that such evidence was admitted as improper character evidence, to show that he had a propensity for criminal activity.

{¶ 56} Barrow did not object to Detective Allen's testimony at trial. We therefore review his argument for plain error only. *Griffin*, 2025-Ohio-1403, at ¶ 11 (12th Dist.).

{¶ 57} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity with that character." *State v. Ruggles*, 2020-Ohio-2886, ¶ 62 (12th Dist.), citing Evid.R. 404(B). However, contrary to Barrow's arguments, Detective Allen's testimony about using law enforcement databases to develop a lead as to Barrow's identity and obtaining a description of the vehicle Barrow drove from "previous incidents" did not amount to the use of improper propensity

evidence. Rather, Detective Allen's reference to the law enforcement databases to identify Barrow as a suspect of the thefts was relevant, nonprejudicial, and offered to explain how the investigation progressed. The following details Detective Allen's testimony about the law enforcement databases and the information gleaned from the databases.

> [PROSECUTOR]: Based on your review of that [Nike] surveillance video, and the photos associated with it, were you able to generate any leads as to the identity of a subject depicted in those videos?
>
> [DETECTIVE ALLEN]: Yes, sir.
>
> [PROSECUTOR]: All right. What was that lead?
>
> [DETECTIVE ALLEN]: So I placed one of those screen snips from the video, took a still image. Placed it on what's called SWOP Intel, Southwest Ohio Police Intel. At that point I generated a lead that it was Geoffery Barrow. And there were previous incidents with him in a GMC Yukon, black in color. Would you like for me to read the plate?
>
> [PROSECUTOR]: Well, I guess let's pause there for just a moment. So you indicated that you were able to utilize that database of sorts to generate a lead as to the identity of the suspect. Is that a fair summary of your statement?
>
> [DETECTIVE ALLEN]: Yes, sir.
>
> [PROSECUTOR]: All right. Once you had a lead on the name of that suspect, did you take any further steps to try to confirm the identity of that suspect?
>
> [DETECTIVE ALLEN]: Yes. We asked – I obtained a photo and then after generating that lead, then going to the law enforcement database, we call it OHLEG, and ran the name in that system and it then displays the BMV photo.

{¶ 58} The references to SWOP Intel and OHLEG did not communicate that Barrow had a criminal history. Furthermore, the detective's statement about "previous incidents with him in a GMC Yukon" did not reveal any criminal activity. Though Barrow would have this court infer that "previous incidents" in the Yukon referred to crimes committed involving the Yukon, the "previous incidents" could have just as easily referred

to a parking ticket or a traffic accident involving the Yukon. Detective Allen, rightfully, did not expand on the "previous incidents," but rather only shared the information he gathered in the course of his investigation that led to Barrow's identity being discovered. There was nothing prejudicial or improper in the admission of this portion of Detective Allen's trial testimony.

### 3. Evidence of Marijuana

{¶ 59} Barrow also complains that the trial court erred when it permitted Detective Allen to testify that "drugs go along with theft and retail theft" and that marijuana was found inside Barrow's Yukon. As Barrow did not object to the admission of this evidence at trial, our review is limited to plain error. *Griffin*, 2025-Ohio-1403, at ¶ 11 (12th Dist.).

{¶ 60} Detective Allen's testimony that he "kn[e]w through [his] training and experience that drugs also go along with theft and retail theft and . . . they can supply their habit" was offered to explain why a canine unit was called to do an open-air sniff of Barrow's vehicle. We find no error in the admission of this testimony as it was relevant to explain the detective's actions in the course of his investigation and the admission of this testimony was not prejudicial to Barrow. See Evid.R. 402.

{¶ 61} Detective Allen's testimony that a "small bag of marijuana . . . not over two and a half ounces" was found in Barrow's vehicle is more problematic. Barrow was not charged with a drug offense and the discovery of marijuana in the vehicle did not further law enforcement's investigation into the theft. The evidence was therefore not relevant and should not have been admitted. Nonetheless, admission of this evidence did not amount to plain error as it had no effect on the outcome of trial. Between Barrow's admissions to law enforcement, his trial testimony, the security footage of the thefts, and the items found inside Barrow's vehicle, including the wire cutters, magnet, and sensors, there was overwhelming evidence that Barrow committed the theft offense. The

admission of Detective Allen's testimony regarding the marijuana found in Barrow's vehicle was therefore harmless.

{¶ 62} Barrow was not prejudiced by the admission of any of the evidence identified above. His arguments are therefore without merit, and his third assignment of error is overruled.

## IV. CONCLUSION

{¶ 63} Having found no merit to Barrow's assignments of error, we hereby affirm his conviction for fifth-degree theft.

{¶ 64} Judgment affirmed.


M. POWELL and SIEBERT, JJ., concur.

# **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*